**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 11 2000**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

LYNDELL MITCHELL,

    Plaintiff-Appellant and Cross-Appellee,

v.

THE CITY OF MOORE, OKLAHOMA, a
Municipal Corporation; MIKE DREA, BRUCE
STORM, and GARY TIPPS, all individually,

    Defendants-Appellees and Cross-Appellants.

Nos. 98-6446
      99-6101
      99-6121
      99-6177

---

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 97-CV-1193-C)**

---

David J. Batton (Michael H. Thompson, Oklahoma City, Oklahoma, with him on
the briefs), Norman, Oklahoma, for Plaintiff-Appellant and Cross-Appellee.

Ted N. Pool (Sherry Blankenship, and Susan K. Noland of Pool, Blankenship &
Vincent with him on the briefs) of Pool, Blankenship & Vincent, Oklahoma City,
Oklahoma, for Defendants-Appellees and Cross-Appellants.

---

Before **TACHA, BALDOCK** and **BRORBY**, Circuit Judges.

---

**BRORBY**, Circuit Judge.

---

Captain Lyndell Mitchell, a police officer with the Moore, Oklahoma police department, sued the City of Moore and three city officials individually, claiming several adverse employment actions, including paid suspensions and the denial of a promotion, created various federal and state causes of action. The district court granted the defendants summary judgment *in toto*. While this suit was still pending before the district court, Captain Mitchell's employment was terminated, at which time Captain Mitchell's union forced the City to arbitrate Captain Mitchell's removal. The City eventually sought to enjoin the arbitration hearing, arguing the summary judgment order was *res judicata* as to the issues in arbitration. The district court refused to grant the injunction. The district court also denied the City's request for attorney fees and granted its full request for costs in the underlying suit. The current case is actually four appeals, with Captain Mitchell appealing the grant of summary judgment and the award of costs, the City appealing the denial of the injunction, and all the defendants appealing the denial of attorney fees. We exercise jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

Captain Mitchell began his career as a police officer with the City of Moore in 1974. He attained the rank of Captain in 1991. In December, 1994, his

superiors appointed Captain Mitchell Administrative Assistant, which qualified him as the second ranking officer in the police department. During his tenure as a police officer, Captain Mitchell was an active member of the Fraternal Order of Police (Union), the exclusive bargaining agent for the police officers employed by the City of Moore.

The current dispute began in June 1995, when Chief of Police Bruce Storm (first individual defendant) gave Captain Mitchell a relatively negative performance evaluation. Chief Storm listed several negatives on the evaluation, including concerns a private business venture had become Captain Mitchell's main focus, concerns about Captain Mitchell's ability to work with others, and a lack of initiative on a particular project. In addition, Chief Storm made some remarks that Captain Mitchell perceived as anti-union, and conceivably formed the background for his claims that future disciplinary actions were based on anti-union animus and thus violated his First Amendment rights:

> Captain Mitchell has frequently expressed interest in assuming a more responsible position within the Police Department. However, rather than acquiring an attitude which would be more in line with an Officer in an Executive position, he has maintained the attitude of a Union member being much more concerned about taking advantage of his benefits, etc. At some point Captain Mitchell must make a decision whether he truly wants to go up and therefore remove himself from the umbrella of security of the F.O.P., or to continue under the protection of the Union. In any event, Captain Mitchell would be well served to do less complaining and to perform as a

Police Executive.

On June 29, 1995, Chief Storm relieved Captain Mitchell of his duties as second-in-command. On the same day, Chief Storm promoted Gary Tipps (second individual defendant) from Sergeant to the newly created rank of Major, and Major Tipps assumed the duties previously performed by Captain Mitchell. Major Tipps resigned his position as Union president in order to accept the promotion. Chief Storm stated in his deposition he chose Major Tipps in part as a way of strengthening his relationship with the Union.

Apparently, Chief Storm's concern about his relationship with the Union was well-founded. Prior to Major Tipps' promotion, the Union had decided to hold a no-confidence vote on Chief Storm. When then-President Tipps mentioned the vote to the City Manager, who is responsible for hiring and firing the Chief of Police and other city employees, the City Manager informed President Tipps such a vote would have no impact on his decision to retain Chief Storm and the publicity surrounding the vote would damage the police department's chances of obtaining new facilities in an upcoming bond or sales tax election. President Tipps and other Union leaders decided to postpone the no-confidence vote until after the bond election. In his deposition testimony, Captain Mitchell pointed to these events as the seed of a conspiracy between Chief Storm, Major Tipps, and

the City Manager to promote Tipps in order to prevent the no-confidence vote, and eventually deprive Captain Mitchell of various rights.

Later in 1995, Chief Storm confidentially hired an undercover police officer to investigate a local gambling and drug operation. Captain Mitchell received an inquiry on Friday, October 6, 1995, from a neighboring police department concerning the undercover officer's identification card, which had turned up in the neighboring jurisdiction. Captain Mitchell was not aware of the undercover operation, so he contacted Chief Storm to find out if the department had indeed hired an undercover officer. Chief Storm instructed his secretary to tell Captain Mitchell not to worry about the matter. However, gossip among the regular officers concerning the "mystery officer" became rampant, and Chief Storm and Major Tipps began to suspect Captain Mitchell of helping fuel the fire. The following Monday, based on concern that the undercover operation had been compromised and that Captain Mitchell criticized his superiors for not informing him about the operations, Chief Storm and Major Tipps charged Captain Mitchell with insubordination and breach of confidence and placed him on administrative leave with pay pending an investigation. In addition, they ordered Captain Mitchell not to work at his family's business during regular department business hours while he remained on suspension. Captain Mitchell admittedly ignored this

order.

Captain Mitchell claims the paid suspension lasted approximately thirty days. At the end of the suspension, Chief Storm recommended to the City Manager Captain Mitchell be suspended without pay for five days, to be served through the loss of five accrued vacation days. This punishment was ultimately rescinded, and the vacation days were restored. After Captain Mitchell returned to work, Major Tipps placed him in a series of what Captain Mitchell described as demeaning positions for his rank and education. In response, Captain Mitchell filed his first Notice of Tort Claim with the City, which objected to the suspension and subsequent assignments, claiming $100,000 in damages.

In July 1996, Sergeant Tipps (he had since been demoted back to Sergeant from Major) overheard a police dispatcher request an officer to escort Captain Mitchell's wife to her car after her restaurant closed. Sergeant Tipps informed dispatch that pursuant to his understanding of a new policy, on-duty officers were no longer to take such calls. When Captain Mitchell learned of this incident, he made a copy of the dispatch tape and provided it to his wife, who then gave the tape to a city councilman. Chief Storm again placed Captain Mitchell on paid administrative leave pending the investigation of this incident. Chief Storm

recommended Captain Mitchell be terminated; however, the City entered into a settlement agreement with Captain Mitchell placing him on six months disciplinary probation instead. During this same time-frame, the Union held a vote of no-confidence on Chief Storm. Chief Storm's attorney responded to the charges put forth by the Union in support of the vote by reading a letter to city council members, which stated in relevant part:

> It is regrettable that Capt. Lyndell Mitchell is ostensibly among the leaders of the FOP who have organized the vote of no confidence .... Although Chief Storm fully recognizes that Capt. Mitchell is entitled to his opinions and viewpoints, it makes it particularly difficult for Chief Storm to operate the department efficiently when the person on whom he must rely most heavily is one of his primary protagonists.

Chief Storm ultimately left his position as Chief of Police. Captain Mitchell applied for the position, as he had done once before when Chief Storm was chosen. City Manager Mike Drea (third individual defendant) appointed an officer Captain Mitchell considered less qualified than himself, passing over Captain Mitchell once again. On August 8, 1997, after instigating the current litigation in July, Captain Mitchell filed his second Notice of Tort Claim with the City, pointing to the tape incident and the promotion pass-over as harassing activity and demanding more than $10,000 in damages. The current lawsuit followed in close proximity.

In his Second Amended Complaint, Captain Mitchell stated seven causes of action: a § 1983[1] claim against the City; a § 1983 and § 1985[2] claim against the individual defendants; a cause of action claiming the City and the individual defendants violated Captain Mitchell's constitutional right to privacy; and four state claims, including a claim sounding in negligence and a claim of tortious breach of contract as to the City, and claims of intentional infliction of emotional distress and defamation directed at the individual defendants. In a sixteen-page order, the district court determined Captain Mitchell failed to provide the

---

[1] 42 U.S.C. § 1983, which states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ....

[2] 42 U.S.C. § 1985, which is titled "conspiracy to interfere with civil rights," and states in relevant part:

[I]n any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

necessary evidentiary support to survive a motion for summary judgment, and granted the defendants' summary judgment motions *in toto*. This timely appeal followed, and constitutes Case Number 98-6446.

Based on representations made in the lawsuit and tort claims, Captain Mitchell was eventually terminated. Rather than pursue his terminwtion in the current suit, Captain Mitchell decided instead to participate in the grievance procedure provided for under the Collective Bargaining Agreement between the City and the Union. The lawsuit and the arbitration process developed concurrently. For instance, the City filed its summary judgment motion May 1, 1998, eight days before the Federal Mediation and Conciliation Service notified the arbitration panel of their selection. The district court issued its Order granting summary judgment October 9, 1998. The arbitration hearing was originally scheduled for August 1998; however, due to a series of postponements, the hearing occurred in July 1999. The arbitration panel issued its decision February 28, 2000, just eight days prior to oral arguments in the current case.

After receiving a favorable ruling on its summary judgment motion, the City moved for injunctive and declaratory relief, arguing the issue involved in the arbitration – Captain Mitchell's termination – was inexorably intertwined with the

judgment entered by the district court. The City sought to enjoin the arbitration hearing and a declaration the district court decision was *res judicata* as to the arbitration. The district court denied the motion, stating there were issues at stake in the arbitration not addressed in its earlier order, and the Union, while involved in the arbitration, was not itself a party to the litigation. The City appeals what is now Case Number 99-6121.

Finally, after the district court granted the City's summary judgment motion, the City moved for costs pursuant to 28 U.S.C. § 1920 and Fed. R. Civ. P. 54(d)(1), and attorney fees pursuant to 42 U.S.C. § 1988 and Fed. R. Civ. P. 54. The district court awarded the City its costs, and Captain Mitchell now appeals that award in Case Number 99-6177. Conversely, the district court denied the motion for attorney fees, a decision the City appeals in Case Number 99-6101. In the interest of judicial economy, a doctrine completely ignored to this point in the case, we will consolidate these four appeals in this opinion and affirm the district court in all respects.

## II. STANDARDS OF REVIEW

We review the summary judgment aspects of this case *de novo* and apply the same legal standard as the district court. *See Simms v. Oklahoma, ex rel.,*

*Dep't of Mental Health & Substance Abuse Services*, 165 F.3d 1321, 1326 (10th

Cir.), *cert. denied*, 120 S. Ct. 53 (1999).  Summary judgment is proper if the

movant shows "there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

"When applying this standard, we view the evidence and draw reasonable

inferences therefrom in the light most favorable to the nonmoving party." *Simms*,

165 F.3d at 1326.

> The movant bears the initial burden of making a prima facie
> demonstration of the absence of a genuine issue of material fact and
> entitlement to judgment as a matter of law.  In so doing, a movant
> that will not bear the burden of persuasion at trial need not negate the
> nonmovant's claim.  Such a movant may make its prima facie
> demonstration simply by pointing out to the court a lack of evidence
> for the nonmovant on an essential element of the nonmovant's claim.

> If the movant carries this initial burden, the nonmovant that
> would bear the burden of persuasion at trial may not simply rest upon
> its pleadings; the burden shifts to the nonmovant to go beyond the
> pleadings and set forth specific facts that would be admissible in
> evidence in the event of trial from which a rational trier of fact could
> find for the nonmovant.  To accomplish this, the facts must be
> identified by reference to affidavits, deposition transcripts, or
> specific exhibits incorporated therein.  Thus, although our review is
> de novo, we conduct that review from the perspective of the district
> court at the time it made its ruling, ordinarily limiting our review to
> the materials adequately brought to the attention of the district court
> by the parties.

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (quotation

marks and citations omitted).  After determining no genuine issue of material fact

exists, we then must examine whether the district court correctly applied the

substantive law.  *See Simms*, 165 F.3d at 1326.

We review the denial of a permanent injunction for an abuse of discretion. *See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1555 (10th Cir.), *cert. denied*, 519 U.S. 928 (1996).  "Under this standard, we accept the district court's factual findings unless they are clearly erroneous and review application of legal principles de novo." *Id.*  We review the district court's decisions to deny attorney fees under 42 U.S.C. § 1988 and award costs under 28 U.S.C. § 1920 for abuse of discretion.  *See Phelps v. Hamilton*, 120 F.3d 1126, 1129 (10th Cir. 1997) (attorney fees); *Callicrate v. Farmland Indus., Inc.*, 139 F.3d 1336, 1339 (10th Cir. 1998) (costs).

## III.  DISCUSSION

### A.  The District Court's Grant of Summary Judgment:  Case No. 98-6446

#### 1.  The Federal Claims

Section 1983 and § 1985 claims share a common element:  a plaintiff must show some deprivation of a federally protected right in order to be successful. *See Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995); *Houston v. Reich*, 932 F.2d 883, 890 (10th Cir. 1991).  Captain Mitchell claimed the deprivation in this case came through violations of his due process rights, his free

speech and free association rights, his right to privacy, and his right to equal protection. The district court determined Captain Mitchell failed to present sufficient evidence to survive summary judgment and found there was no deprivation of a federally protected right. We agree and turn to each claimed deprivation in turn.

### a. Denial of Due Process

> [P]rocedural due process ensures that a state will not deprive a person of life, liberty or property unless fair procedures are used in making that decision; substantive due process, on the other hand, guarantees that the state will not deprive a person of those rights for an arbitrary reason regardless of how fair the procedures are that are used in making the decision.

*Archuleta v. Colorado Dep't of Institutions, Div. of Youth Services*, 936 F.2d 483, 490 (10th Cir. 1991) (quoted in *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1253 (10th Cir. 1998)). Therefore, in order to succeed on his due process claim, Captain Mitchell needed to establish he had a protected property or liberty interest in the promotion he was denied, or in continued employment as Captain without the stigma of a paid suspension. *See Hennigh*, 155 F.3d at 1253.

The City took a slightly broader view of the potential interest, but still argued in its summary judgment motion Captain Mitchell could not have a property or liberty interest in any aspect of his employment because Oklahoma is

-13-

an "at-will" state and no statute or contract altered that traditional relationship. By highlighting the absence of evidence supporting Captain Mitchell's case, the City properly met its burden – as the movant for summary judgment – of demonstrating the lack of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). After the City pointed out this deficiency in Captain Mitchell's prima facie case, as nonmovant for summary judgment his burden was to identify specific facts, through affidavits, depositions, or exhibits, from which a rational trier of fact could find in his favor. *See Adler*, 144 F.3d at 671. While Captain Mitchell corrects the error somewhat on appeal, his response to the Defendants' motions for summary judgment was entirely inadequate. As the district court pointed out, Captain Mitchell's response was limited to conclusory statements and was void of cites to the specific portions of the Collective Bargaining Agreement, City Charter, Police Rules and Regulations, or City Personnel and Procedure Manual that might have supported his theory that a contract existed creating a property or liberty interest in his position. The district court was not obligated to comb the record in order to make Captain Mitchell's arguments for him.

In the *Adler* case, we stated "[t]he district court has discretion to go beyond the referenced portions of these materials, but is not required to do so. If the rule

-14-

were otherwise, the workload of the district courts would be insurmountable and summary judgment would rarely be granted." *Id*. at 672 (citations omitted). The current case illustrates that point well. The argument section of Captain Mitchell's response is fourteen pages long, four of which are devoted solely to the due process argument, and is accompanied by an appendix of over a thousand pages. Rather than argue on appeal that his response adequately set forth specific facts demonstrating a genuine issue of material fact, Captain Mitchell argues the district court should have given him a chance to correct any inadequacies. This argument is as specious as his response to the summary judgment motion. No matter how often they are made to feel the part, our brothers and sisters on the district court bench should not be cast in the role of stage director of the litigation drama – forced to prod the actors through rehearsals until the proper performance is achieved. To do so would not only consume an inordinate amount of time, but would result in courts abandoning their neutrality and becoming advocates in the adversarial process. We will not sanction such a transformation.

Captain Mitchell failed to meet his burden of presenting specific facts, by reference to specific exhibits in the record, to overcome the motion for summary judgment. "[W]here the burden to present such specific facts ... was not adequately met below, we will not reverse a district court for failing to uncover

them itself." *Adler* at 672.

b. First Amendment Claims

Captain Mitchell next claims his paid suspensions and inability to obtain promotions were a direct result of actions he took or statements he made as a Union member, in violation of his First Amendment rights to free speech and free association. However, Captain Mitchell's response to the summary judgment motions on this issue suffers from the same deficiencies as his due process claims.

We employ a two-part test when evaluating public employees' claims of retaliation for exercising their First Amendment rights:

> First, one must determine whether the plaintiff's statements can be fairly characterized as constituting speech on a matter of public concern. Second, courts must determine whether the interests of the [employee], as a citizen, in commenting upon matters of public concern outweigh the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees.

*David v. City and County of Denver*, 101 F.3d 1344, 1355 (10th Cir. 1996) (quotation marks and citations omitted), *cert. denied*, 522 U.S. 858 (1997). In its summary judgment motion, the City focused on the threshold question and argued the speech involved in this case was not a matter of public concern, but instead

related solely to issues of internal personnel disputes. Captain Mitchell's response ignored this point, failing to specifically mention even one instance of speech engaged in by Captain Mitchell that might have led to retaliation. Captain Mitchell focused instead on his right to associate with the Union. However, the extent of Captain Mitchell's argument on this point is limited to the following conclusory statement: "Plaintiff engaged in union activity. As a direct or circumstantial result, Plaintiff was publicly humiliated at a council meeting; false charges leveled upon him; denied promotional opportunities; and ultimately terminated." This response is woefully inadequate to survive a summary judgment motion, especially when Captain Mitchell claims he was passed over for promotions because of his association with the Union, but acknowledges both individuals who were hired in his place were past presidents of the Union.

### c. Remaining Claims

Finally, Captain Mitchell hoped to find a violation of his federally protected rights within either the right to privacy or the right to equal protection. We fail to see what might be accomplished by meticulously pointing out the same inadequacies in Captain Mitchell's response in these areas as we have noted in the due process and First Amendment claims. Suffice it to say the City characterized Captain Mitchell's privacy argument as a claim of a "constitutional right to

moonlight or to work a second job while suspended with pay," and Captain Mitchell failed to cite to any evidence in the record, or relevant case law, to counter that characterization. Nor did Captain Mitchell even so much as direct the district court to any evidence in the record showing he was actually prevented from working at his family business or penalized in any way for doing so. Finally, Captain Mitchell failed to cite to any evidence in the record tending to show he was treated differently than officers "similarly situated" as required for an equal protection claim. *See Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998). Captain Mitchell's conclusory allegation to the effect that he believed he was the best-qualified candidate for a job and was passed over only because he was a Union member is simply not enough to survive summary judgment.

Captain Mitchell's response to the defendants' summary judgment motions failed to meet his burden to set forth specific evidence demonstrating a genuine issue of material fact. As such, he failed to show the deprivation of a fundamental right, and the district court properly granted defendants summary judgment on the federal claims.

## 2. The State Claims

## a. Individual Defendants

Captain Mitchell also raised two tort claims against the individual defendants, the first for intentional infliction of emotional distress, and the second for defamation. Captain Mitchell conceded in his summary judgment response that if the individual city and police department officials were acting within the scope of their employment when they took the actions of which Captain Mitchell complained, Oklahoma law shields them from tort liability.[3] In their motions for summary judgment the individual defendants claimed Captain Mitchell failed to present any evidence their activities occurred outside the scope of their employment. Captain Mitchell's only response was to argue this is an issue of fact usually sent to the jury. Again, Captain Mitchell misunderstands the role of summary judgment. The whole point of summary judgment is to decide issues of law when there are no material facts in dispute that need to be decided by the trier of fact. After the individual defendants showed the evidence presented pointed exclusively to a finding they were acting within the scope of

---

[3] *See* Okla. Stat. Ann. tit 51, § 153, which states in relevant part:

> The state or a political subdivision shall be liable for loss resulting from its torts or the torts of its employees acting within the scope of their employment .... The liability of the state or political subdivision under this act shall be exclusive and in place of all other liability of the state, a political subdivision or employee at common law or otherwise.

-19-

their employment in making the hiring and discipline decisions complained of here, Captain Mitchell was obligated to come forward in his response and refer the district court to specific evidence that could at least make an inference to the contrary. Captain Mitchell failed to meet that obligation. The district court correctly determined the individual defendants were immune from the state tort law claims.

### b. The City

Finally, Captain Mitchell sued the City under theories of negligent hiring, training and retention, and tortious breach of contract. Captain Mitchell argues the district court erred by granting the City summary judgment on these claims. We cursorily dispose of these arguments based on our analysis above. First, Captain Mitchell cannot support a claim for negligent hiring and retention without some showing the individuals hired and retained participated in wrongful conduct. Captain Mitchell failed to do so. In addition, as stated during the discussion of the § 1983 claim, Captain Mitchell did not steer the district court to the specific portions of the appropriate documents supposedly creating the implied contract right and therefore cannot survive summary judgment on the tortious breach of contract claim.

**B. Motion Seeking Injunctive and Declaratory Relief: Case No. 99-6121**

After the initiation of the underlying suit in this case, Captain Mitchell was terminated December 16, 1997 because the City determined statements he made in his lawsuit and tort claims constituted insubordination. Captain Mitchell elected to pursue his reinstatement and back pay through the grievance procedure provided for under the Collective Bargaining Agreement between the Union and the City. While the Union demanded arbitration in January, 1998, the City waited a full year, until after it was successful on its summary judgment motion in the underlying suit, to ask the district court to enjoin the arbitration proceeding.[4] The district court denied the City's motion, finding the judgment in the underlying case was not *res judicata* as to the issues involved in arbitration. We agree.

All the parties involved seemed to assume the underlying lawsuit involved distinct and separate events from Captain Mitchell's termination. In his response to the summary judgment motion, Captain Mitchell stated he was pursuing "his

---

[4] The arbitration panel issued its decision, ruling against the City and reinstating Captain Mitchell, on February 28, 2000, eight days prior to oral argument in this case. The City subsequently appealed the arbitration decision to the state district court. The state district court has issued a stay of the arbitration award pending our decision in this case and further proceedings in the state courts. While arguably the City's request for injunction is moot now that the arbitration panel has issued its decision, we reach the merits of this appeal because the City also sought declaratory judgment.

-21-

reinstatement and claim for back wages through the arbitration process, any remaining claims are addressed below and a part of this lawsuit." The City, in its reply to Captain Mitchell's response on summary judgment states:

> Plaintiff is now attempting to insert his termination into this cause even though he states he is not seeking reinstatement or back wages .... Plaintiff cannot have it both ways. The termination hearing is pending before an arbitrator as provided in the [Collective Bargaining Agreement]. He must elect a forum and stick to it, and Defendants are entitled to notice as to the issues of the case. Plaintiff did not request to amend his complaint to include termination in the instant case and anything involving termination should be denied.

On appeal, the City argues Captain Mitchell's pleadings, motions, and other documents submitted to the district court were "replete" with references to his termination.

While we agree Captain Mitchell referred to his termination in several documents, it was clearly done as an attempt to create sympathy for his plight, and not done to insert new issues into the litigation. For instance, in his response to the summary judgment motion, Captain Mitchell states: "Although Plaintiff's claims for reinstatement or back wages are not before the Court as an element of damages, his termination is properly before this Court as it relates to the entire

process that Plaintiff endured."[5]  More importantly for our purposes on review, the district court found its order in the underlying suit was void of consideration of the issues presented for arbitration, and the Union had an interest in the arbitration not addressable by the order.  Our review is necessarily based on these findings and not the representations of the parties.

In our Circuit, "[c]laim preclusion[6] requires:  (1) a judgment on the merits in the earlier action; (2) identity of the parties or their privies in both suits; and (3) identity of the cause of action in both suits."  *Yapp*, 186 F.3d at 1226.  Put another way, the doctrine of claim preclusion prevents "the parties or their privies from relitigating issues that were or could have been raised in" an earlier action. *Clark v. Haas Group, Inc.*, 953 F.2d 1235, 1238 (10th Cir.), *cert. denied*, 506 U.S. 832 (1992).  In this case, we focus on the second and third inquiries, which we examine in reverse order.

---

[5]  We note there is no evidence the district court was in any way impacted by such "sympathy" arguments.  A motion *in limine* would have been the appropriate mechanism to prevent presentation of such arguments to the jury had the case proceeded to trial.

[6]  "Although the parties use the term 'res judicata,' for purposes of clarity, this court employs the term 'claim preclusion' instead." *Yapp v. Excel Corp.*, 186 F.3d 1222, 1226 n.1 (10th Cir. 1999).

We employ the transactional approach of the Restatement (Second) of Judgments to determine whether the constitutional claims raised in the lawsuit shared an identity with the termination claims raised in the arbitration. *Yapp*, 186 F.3d at 1227. Under this test, we preclude claims "arising out of the same 'transaction, or series of connected transactions' as a previous suit." *Id*. (quoting Restatement (Second) of Judgments § 24 (1982)).

> What constitutes the same transaction or series of transactions is "to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."

*Id.* (quoting Restatement (Second) of Judgments § 24 (1982)).

Our case law seems to stand for the proposition that all claims arising from the same employment relationship constitute the same transaction or series of transactions for claim preclusion purposes. *See Id*. at 1228; *Clark*, 953 F.2d at 1239. However, in *Yapp* and *Clark* the facts giving rise to the second lawsuit – termination in both cases – were in existence at the time the first suit was filed. *See Yapp*, 186 F.3d at 1225-26; *Clark*, 953 F.2d at 1236. That is not the case here, where Captain Mitchell was terminated after his first suit was filed.[7] While

[7] While Captain Mitchell filed a Second Amended Complaint December 17, 1997, one day after he was officially terminated, we have no way of

-24-

we have yet to decide the issue, we agree with those courts holding the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed. *See Johnson v. Board of County Comm'rs of Johnson County, Kansas*, No. 99-2289-JWL, 1999 WL 1423072, at *3-4 (D. Kan. Dec. 9, 1999) ("Because a plaintiff has no obligation to expand his or her suit in order to add a claim that he or she could not have asserted at the time the suit was commenced, several circuits have held that res judicata does not bar a second lawsuit to the extent that suit is based on acts occurring after the first suit was filed.") (citing *Computer Associates Int'l, Inc. v. Altai, Inc.*, 126 F.3d 365, 369-70 (2d Cir. 1997), *cert. denied*, 523 U.S. 1106 (1998); *Manning v. City of Auburn*, 953 F.2d 1355, 1360 (11th Cir. 1992); *Spiegel v. Continental Illinois Nat'l Bank*, 790 F.2d 638, 646 (7th Cir.), *cert. denied*, 479 U.S. 987 (1986); *Los Angeles Branch NAACP v. Los Angeles Unified School Dist.*, 750 F.2d 731, 739 (9th Cir. 1984), *cert. denied*, 474 U.S. 919 (1985)).

Regardless of the outcome of the third inquiry, however, we affirm the

---

determining whether the complaint was amended to include termination issues because the defendants did not include Captain Mitchell's initial complaint in their appendix.

district court because the second prong – identity of parties – is not met.  On

appeal, the City argues Captain Mitchell and the Union are obviously in privity

with each other and therefore the district court erred in not precluding the

arbitration proceeding.  However, we have previously held "the interests of the

union and the individual employee are not always coextensive." *Ryan v. City of

Shawnee*, 13 F.3d 345, 347 (10th Cir. 1993).  *See also Alexander v. Gardner-

Denver Co.*, 415 U.S. 36, 58 n.19 (1974).  In *Ryan*, we determined an arbitration

of an employee's grievance did not preclude a subsequent civil rights action, in

part "because the union usually has exclusive control over presentation of the

grievance, [and therefore] the employee's opportunity to be compensated for a

constitutional deprivation might be lost merely because it was not in the union's

interest to press his claim vigorously." *Ryan*, 13 F.3d at 347 (quotation marks

and citation omitted).  We think the same can be said of a union's interests in a

subsequent arbitration when the employee first pursues a civil rights action.

Therefore, the district court did not err by determining claim preclusion was not

appropriate in this instance and did not abuse its discretion in denying the

injunctive and declaratory relief sought.

## C.  Attorney Fees:  Case No. 99-6101

After the district court granted the defendants' motions for summary

judgment, the defendants jointly moved for the award of attorney fees pursuant to 42 U.S.C. § 1988.  While a prevailing plaintiff ordinarily is entitled to attorney fees, *see Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983), a prevailing defendant in a civil rights action may recover attorney fees only "if the suit 'was vexatious, frivolous, or brought to harass or embarrass the defendant.'"  *Utah Women's Clinic, Inc. v. Leavitt*, 136 F.3d 707, 709 (10th Cir. 1998) (per curiam) (quoting *Hensley*, 461 U.S. at 429 n.2).  This is a difficult standard to meet, to the point that rarely will a case be sufficiently frivolous to justify imposing attorney fees on the plaintiff.  *See Clajon Production Corp. v. Petera*, 70 F.3d 1566, 1581 (10th Cir. 1995).  The dismissal of claims at the summary judgment stage does not automatically meet this stringent standard.  *See Jane L. v. Bangerter*, 61 F.3d 1505, 1513 (10th Cir. 1995).

The district court specifically avoided finding Captain Mitchell brought the lawsuit for an improper purpose.  The district court noted "[t]he Order only resolved that no legal remedy [was] available to [Captain Mitchell] under the facts as supported by the evidence."  As noted earlier, the district court determined Captain Mitchell's response to the summary judgment motion was inadequate, but that is an entirely different finding than branding the suit itself frivolous.  We see nothing in this record that requires a holding the district court

abused its discretion in denying attorney fees, and we affirm.

**D. Costs: Case No. 99-6177**

Finally, the defendants filed a joint motion for a bill of costs, with a brief in support. The defendants requested a total of $10,264.13 for deposition costs. After a hearing, the court clerk reduced the requested deposition costs to $7,371.53 and taxed the total costs in the amount of $8,492.03. Both sides filed objections to the award with the district court. The defendants claimed the clerk improperly reduced the deposition costs by $2,148.70 for depositions not used or cited in the parties' motions for summary judgment and confined their objections to that portion of the clerk's reduction. Captain Mitchell objected to any award of costs in this case. The district court denied Captain Mitchell's motion to disallow costs and restored the $2,148.70 in deposition costs as requested by the defendants. Captain Mitchell now appeals, arguing the award of costs was inappropriate in this case and attacking specific award amounts. We affirm.

Federal Rule of Civil Procedure 54 makes the award of costs presumptive: "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed. R. Civ. P. 54(d)(1). The general costs statute, 28 U.S.C. § 1920, permits recovery of deposition costs "necessarily

obtained for use in the case." 28 U.S.C. § 1920(2), (4). "We have stated that this definition authorizes recovery of costs with respect to all depositions reasonably necessary to the litigation of the case." *Furr v. AT&T Technologies, Inc.*, 824 F.2d 1537, 1550 (10th Cir. 1987) (quotation marks and citation omitted).

Captain Mitchell attacks the award of costs from a plethora of angles, most of them confused and all of them unavailing. First, Captain Mitchell argues imposing costs in this case is simply unfair. He states the presumption in favor of costs should be relaxed when the prevailing party is the defendant in a civil rights case, just as it is tougher for a defendant to receive attorney fees under § 1988. *See* Sec. III. C., *supra*. However, Captain Mitchell fails to cite any authority in support of this argument. The Fourth Circuit recently rejected a similar argument and allowed costs against a losing plaintiff in a Title VII case. *See Cherry v. Champion Int'l Corp.*, 186 F.3d 442, 448 (4th Cir. 1999). We find the Fourth Circuit's reasoning persuasive, and uphold the traditional presumption in favor of awarding costs, regardless of whether the prevailing party is a defendant in a civil rights case.

Captain Mitchell next argues the costs of the depositions of the individual defendants in this case were unnecessary for trial. Captain Mitchell makes this

argument because while he requested the depositions of Chief Storm, Mr. Drea and Mr. Tipps, he decided not to have the depositions transcribed, to save on his own costs. Captain Mitchell now objects to the defendants collecting the costs they incurred in paying for the transcription of their own depositions. This argument borders on the absurd. Captain Mitchell requested and took these depositions. He felt they were necessary enough to the litigation to include them in his appendix to his response to the summary judgment motion in the underlying case. If the depositions of the three named individual defendants in the case are not necessary to the litigation, we fail to see how any deposition would qualify as a recoverable cost. Captain Mitchell's decision to avoid transcribing the depositions of the main figures in his own lawsuit should not prevent the defendants from collecting those costs when they chose a different route. *Cf. Callicrate*, 139 F.3d at 1341 (defendants awarded costs of copying plaintiff-requested depositions of defendants' employees or representatives).

Last, Captain Mitchell argues depositions not used in defendants' summary judgment motions were improperly taxed as costs, and depositions taken prior to the grant of summary judgment but paid for after the court's order should be disallowed. We have previously rejected both arguments. We measure whether an incurred cost was reasonably necessary under § 1920 "in light of the facts

known to the parties at the time the expenses were incurred." *Id*. at 1340. The expenses in this case were incurred when the depositions were taken and transcripts ordered, not when the reporter mailed a bill for services. As for the unused transcripts, it would be "inequitable to essentially penalize a party who happens to prevail on a dispositive motion by not awarding costs associated with that portion of discovery which had no bearing on the dispositive motion, but which appeared otherwise necessary at the time it was taken for proper preparation of the case." *Id*. In its order on this issue, the district court stated the depositions were reasonably necessary for trial because when the summary judgment motion was granted, the discovery period in the case had passed, trial was imminent, and sworn testimony is used for various reasons at trial. We see no evidence of an abuse of discretion on behalf of the district court.

Having carefully considered the various arguments made by the parties involved in these four appeals, we **AFFIRM** the district court in all respects.