**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 15 2004**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UTAH ENVIRONMENTAL
CONGRESS,

     Plaintiff - Appellant,

  v.

U.S. BUREAU OF LAND
MANAGEMENT, an agency within
the U.S. Department of Interior;
KENT HOFFMAN, in his official
capacity as BLM Deputy State
Director for Lands and Minerals,

     Defendants - Appellees,

and

CANYON FUEL COMPANY, L.L.C.,

     Defendant - Intervenor-
     Appellee.

-------------------------------------

STATE OF UTAH, DIVISION OF
OIL, GAS AND MINING,

     Amicus Curiae.

No. 04-4153
(D. Ct. No. 2:03-CV-911 DB)
(D. Utah)

---

**ORDER AND JUDGMENT**[*]

---

[*]This order and judgment is not binding precedent, except under the

(continued...)

Before **TACHA**, Chief Circuit Judge, **HENRY**, Circuit Judge, and **WHITE**, District Judge.[**]

Plaintiff-Appellant Utah Environmental Congress ("UEC") appeals the District Court's denial of a permanent injunction. In denying the injunction, the District Court found that UEC failed to satisfy any of the four requirements necessary for granting a permanent injunction. On appeal, UEC fails to contest two of these four requirements. We take jurisdiction under 28 U.S.C. § 1291, **DENY** all pending motions, and because the uncontested findings provide a sufficient basis for denying the permanent injunction, **AFFIRM**.

## I. Background

In 1999, following an extensive administrative review process, Defendant-Intervenor-Appellee Canyon Fuel Company and Defendant-Appellee Bureau of Land Management ("BLM") entered into a lease permitting Canyon Fuel to expand its coal mining operations in the Manti-La Sal National Forest. In February 2003, Canyon Fuel sought to modify this arrangement to permit mining

---

[*](...continued)
doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**] Honorable Ronald A. White, District Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

- 2 -

in areas not previously approved for mining. On July 31, 2003, BLM approved the modification, thereby permitting Canyon Fuel to mine the areas referred to during this litigation as the 3L and 4L panels.

UEC seeks to enjoin the mining of these panels. The District Court initially granted a temporary injunction with respect to the 4L panel and denied an injunction for the 3L panel.[1] The District Court later denied UEC's motion for a permanent injunction for the 4L panel and granted the Defendants' motion to lift the temporary injunction. UEC timely appealed.

## II. Discussion

We review the denial of a permanent injunction for abuse of discretion. *See Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1198 (10th Cir. 2000). Under this standard of review, we "accept the district court's factual findings unless they are clearly erroneous and review application of legal principles de novo." *Id.*

To grant a permanent injunction, a district court must find that four requirements have been satisfied: "(1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing part[ies]; and (4) the injunction, if

---

[1]UEC did not appeal the denial of the temporary injunction for the 3L panel, Canyon Fuel completed mining the panel, and therefore only the 4L panel remains under consideration in this appeal.

issued, will not adversely affect the public interest." *Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003).

The District Court found that UEC failed to meet any of these requirements. On appeal, UEC argues that the District Court erred in finding that the first two requirements were not met. UEC, however, does not contest the District Court's findings with respect to the last two requirements. Because a permanent injunction cannot be granted unless all four requirements are satisfied, we need only consider these latter two requirements to decide this appeal.

The third requirement for granting a permanent injunction requires a court to balance the harms that would result from denying the injunction against the harms that would result from granting the injunction. In balancing the harms, the District Court found that the financial losses that would occur as a result of granting the permanent injunction outweighed the "speculative claims of environmental harm" that would result from mining. UEC does not contest this finding on appeal.

The fourth requirement for granting a permanent injunction requires a court to consider whether granting the injunction would adversely affect the public interest. The District Court found that granting the injunction would adversely affect the public because it would prevent the mining of enough coal to provide electricity to nearly a half million households for an entire year. UEC does not

- 4 -

contest this finding on appeal.

A permanent injunction cannot be granted if any of the four requirements has not been met. *Id*. Because UEC does not argue that the District Court erred in finding that the balance of harms weighs against granting the injunction or that the public interest would be adversely affected by the injunction, the District Court—regardless of whether it properly assessed the merits of UEC's position or the possibility of irreparable harm—did not abuse its discretion in denying the permanent injunction.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** the District Court's denial of a permanent injunction. We **DENY** Canyon Fuel's motion to supplement the appendix.

ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge

04-4153, *Utah Environmental Congress v. Bureau of Land Management*
**HENRY, J.,** concurring.

I concur fully in the court's conclusion. I write separately only to note a lingering concern in this case, which although it does not compel another outcome, still gives me pause.

In a slightly different context, but still one involving doing the right thing, the left hand should not know what the right hand is doing. *See Matthew* 6:3 (King James). Here, unfortunately, it appears the left hand may not know what the left hand is doing. That is, I might be able to understand the BLM and the Forest Service not communicating with each other. But what is difficult is that the Forest Service's actions suggest that in this matter it did not communicate with itself.

The Forest Service, as an agency of the Department of Agriculture, manages National Forests. In the context of mining, the Forest Service is charged with protecting the surface estate of land owned by the people of the United States through their government. Specifically, the Forest Service must insure that mining "operations . . . . shall be conducted so as to minimize adverse environmental impacts on National Forest System surface resources." 36 C.F.R. § 228.1.

In this case we have an obviously fragile ecosystem. In the opening stages of this controversy, the Forest Service made very clear its concerns about mining

under streams; indeed, that is why stipulation 9 was made a part of the agreement. Subsidence mining is so named because it–apparently almost always–causes subsidence, which is a rapid sinking of the surface. Of course, where a river is involved, such subsidence causes additional concern to downstream users, and to the surrounding landowners. I am not qualified to analyze, nor do the parties present detailed arguments evaluating the aftereffects of this subsidence on this stream, which, fortunately for this purpose, appears not to involve much water. But, at the outset, the Forest Service was very concerned with subsidence in the stream. As their letter of May 8, 2003, states:

> we have concluded that there would be a substantial risk to water flow and the related riparian and aquatic ecosystems in the canyon for portions of the stream channel. The value of these resources is especially prominent considering the current drought.

BLM App. 278 (Letter from Forest Service to BLM, dated May 8, 2003).

> Furthermore, the Acting Forest Supervisor

> concluded that there [was] insufficient new information and there are too many unknowns regarding the duration of effects to cause further evaluation of the proposal and modify the original decisions document in the ROD.

*Id.* at 279. However, later in the process the Forest Service seemed to admit that it simply dropped the ball. That is, despite its earlier serious concern about subsidence mining under a stream, the Forest Service concluded that it had not adequately perfected its concern so it was still entitled to object:

- 2 -

As documented in the ROD, it was the intent of the [Forest Service] that consent to the coal lease was conditioned upon restriction of mining operations under the drainage in the East Fork of Box Canyon that would cause subsidence. . . . [T]hose terms were not clearly carried forward in the stipulations attached to the lease that became a contract between the United States and the lessee.

BLM App. 429 (Letter from Forest Service to BLM, dated Jul. 29, 2003). Despite this omission, the Forest Service "share[s] the concerns of the Manti-La-Sal National Forest that subsidence of the area could impact the stream and associated ecosystem." Id. Given the terms of the lease, the Forest Service had to "recognize that the BLM has the responsibility for administration of federal leases." Id. at 429-30.

It is difficult to square the earlier concerns with the later action. But, as the plaintiffs did not adequately present their case on appeal, and as the Forest Service did not preserve its ability (and responsibility, it seems) to participate in the final process, we are left with the Office of Surface Mining's conclusion that the submitted permit revision constituted a mining plan modification within 30 C.F.R. § 746.11(a) and 746.18(d)(6) (requiring a "change in post-mining land use" to prompt Secretarial approval). Our legal conclusion is required; the BLM action is not arbitrary and capricious under these facts. We can only hope that the Office of Surface Mining's conclusion, made without the benefit of active Forest Service consultation, turns out to be accurate.