Wesley L. **ROBERTS,** Plaintiff,

v.

**SEDGWICK COUNTY SHERIFF'S DE-PARTMENT and the Board of County Commissioners for the County of Sedgwick, Defendants.**

No. 02–2337–JWL.

United States District Court,
D. Kansas.

Feb. 13, 2004.

---

Martin M. Meyers, The Meyers Law Firm, LC, Stephen C. Thornberry, Thornberry Law Firm LLC, Kansas City, MO, for Plaintiff.

Alan L. Rupe, Richard Allen Olmstead, S. Douglas Mackay, Kutak Rock, LLP—Wichita, Wichita, KS, for Defendants.

### MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff filed suit against defendants alleging that defendants unlawfully terminated his employment on the basis of his race and/or in retaliation for plaintiff's engaging in protected activity, both in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. This matter is presently before the court on defendants' motion for summary judgment on plaintiff's claims (doc. # 77). As set forth in more detail below, the motion is granted in part and denied in part. It is granted with respect to plaintiff's race discrimination claim, is denied with respect to plaintiff's retaliation claim and is denied to the extent defendants seek to limit plaintiff's remedies based on the after-acquired evidence doctrine.

## I. Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff was employed as a Detention Deputy for the Sedgwick County Detention Facility from November 1989 until April 2001. Detention deputies are generally assigned to work a particular post and the deputies then rotate from post to post within the detention facility. For example, a detention deputy might be assigned to the "Rover" post (moving throughout the facility to respond to a wide range of situations); the "Processor" post (physically processing an incoming detainee into the facility); the "Master Control" post (sitting at a panel of computer terminals and controlling most of the doors within the facility); the "Booking Officer" post (handling the booking paperwork and checking the computer screens to determine all charges that have been filed against each inmate detained in the facility); the "Indirect Pod" post (observing inmate behavior from a closed booth and responding to inmate questions); the "Direct Pod" post (observing inmate behavior through direct contact with the inmates); the "Professional Visitation" post (monitoring detainees' visits with their counsel and other professionals); the "Clinical Visitation" post (monitoring detainees' visits with clinical staff); the "Work Release" post (monitoring inmates at the work release center); or the "Lobby" post (monitoring visitors to the jail).

In 1991, plaintiff notified defendants that he had been diagnosed with an eye condition that caused his eyes to be sensitive to light; that the condition was permanent; and that his ability to use the com-

puters at work was quite limited. While it is unclear from the record, plaintiff's eye condition apparently made it impossible for defendants to assign plaintiff to the Booking Officer or Master Control posts, as these posts involved use of a computer. In any event, defendants accommodated plaintiff's eye condition without incident. In 1991 or 1992, plaintiff suffered an on-the-job ankle injury that resulted in permanent restrictions on plaintiff's ability to walk, stand and use stairs. Defendants were aware of the permanent nature of plaintiff's restrictions as early as 1993. Because of plaintiff's restrictions, he was unavailable for assignment to those posts requiring significant standing, walking or climbing of stairs. Nonetheless, defendants accommodated these restrictions and simply assigned plaintiff to those posts that comported with his physical restrictions, including the Rover post, the Professional Visitation post and the Indirect Pod post. In sum, defendants successfully accommodated plaintiff's permanent restrictions since at least 1993 and the record is devoid of any evidence suggesting that defendants ever experienced any difficulties in accommodating plaintiff's restrictions.

In 1998, plaintiff was one of fourteen employees in the Sheriff's Department who filed a lawsuit against the Department alleging that they had suffered race discrimination and retaliation in the course of their employment. That case, captioned *Caban et al. v. Sedgwick County Sheriff's Department*, was assigned to Judge Murguia of this district. While Judge Murguia dismissed several of the plaintiffs' claims on summary judgment, several claims proceeded to trial and trial was set to begin in May 2001. There is some evidence in the record that defendants perceived plaintiff as the "catalyst" of the *Caban* lawsuit and the "leader" of the fourteen plaintiffs in that lawsuit.[1] There is ample evidence in the record that plaintiff, throughout his employment with defendants, complained fairly regularly about alleged discrimination and retaliation in the workplace.

Meanwhile, in January 2001, a new Sheriff, Gary Steed, took office in Sedgwick County. Shortly after Sheriff Steed took office, and just days after plaintiff submitted to Sheriff Steed a written complaint of race discrimination, the Department began investigating plaintiff's personnel records and medical file and, more specifically, plaintiff's permanent restrictions. The results of the investigation into plaintiff's medical condition were submitted to the undersheriff, who then recommended to Sheriff Steed that he terminate plaintiff's employment. It is unclear whether the investigation occurred at the direction of Sheriff Steed. In any event, Sheriff Steed notified plaintiff on March 27, 2001–just four weeks after plaintiff made a complaint of race discrimination and approximately one month before the trial was to begin in *Caban*–that plaintiff's employment was going to be terminated subject to an employment status hearing set for April 3, 2001. Specifically, Sheriff Steed advised plaintiff that the Department was terminating his employment based on the fact that plaintiff, due to his permanent physical restrictions, could not perform the essential functions of the detention deputy position.

The employment status hearing occurred on April 3, 2001 and, according to defendant, plaintiff "admitted" during the hearing that his permanent restrictions prohibited him from performing the essential functions of his job. Plaintiff denies

---

1. Defendants' counsel, in their motion for attorneys fees filed after the jury returned a verdict in favor of defendants on all claims in the *Caban* lawsuit, referred to plaintiff as the "self-appointed leader and catalyst" of the *Caban* plaintiffs.

making that admission and the transcript of the hearing reveals only that plaintiff testified that he could not be assigned to every post in the facility-something that was well known to defendants for several years. In any event, following the hearing, Sheriff Steed made the final decision to terminate plaintiff's employment and, according to defendants, this decision was based both on their assessment that plaintiff could not perform the essential functions of his job in light of his permanent restrictions as well as plaintiff's "admission" during the hearing that he could not perform the essential functions of his position. Sheriff Steed notified plaintiff of his decision concerning the termination of plaintiff's employment on April 6, 2001. According to defendants, no other detention deputy employed by the Department had any permanent physical restrictions as of April 2001 and, thus, no other employees were terminated at that time as a result of any policy concerning permanent restrictions.

Additional facts will be provided as they relate to plaintiff's particular claims.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal-Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a spe-

cific exhibits incorporated therein." *Adams*, 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and in-expensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1); *see also Kaster v. Safeco Ins. Co. of Am.*, 2003 WL 22854633, at *2 (10th Cir. Dec.3, 2003) (affirming the district court's grant of summary judgment in favor of defendant in an ADEA case where the plaintiff had failed to present evidence sufficient for a reasonable jury to conclude that Safeco's employment decisions were age-related); *Young v. White*, 2003 WL 21940941, at *1–2 (10th Cir. Aug.14, 2003) (affirming district court's grant of summary judgment in favor of defendant in race discrimination and retaliation context).

## III. Claim Preclusion

Defendants' initial argument in support of their motion for summary judgment is that plaintiff's claims are barred by the doctrine of claim preclusion because plaintiff participated in the *Caban* lawsuit and attempted to introduce evidence of his termination in that lawsuit. In that regard, plaintiff's employment with defendants was terminated several weeks prior to the trial in *Caban* and during the pendency of defendants' motion for summary judgment in that case. After his discharge, plaintiff sought leave to file a surreply to defendants' summary judgment motion in an effort to set forth evidence of his discharge to further support his pending retaliation and discrimination claims. Judge Murguia denied plaintiff's motion for leave and plaintiff did not again attempt to introduce evidence of his termination in connection with the *Caban* suit. In any event, according to defendants, plaintiff's attempt to introduce evidence of his termination in

*Caban* is fatal to his claims here. The court disagrees.

Defendants' argument that plaintiff's claims are barred is grounded in large part on two Tenth Circuit cases-*Yapp v. Excel Corp.*, 186 F.3d 1222 (10th Cir.1999) and *Clark v. Haas Group, Inc.*, 953 F.2d 1235 (10th Cir.1992)-that seem to stand for the proposition that all claims arising from the same employment relationship constitute the same transaction or series of transactions for purposes of claim preclusion. According to defendants, then, plaintiff's termination (the basis for his claims in this suit) arises out of the same transaction (his employment with defendants) as the claims in his previous suit and are thus barred under Tenth Circuit precedent. Since its decision in *Yapp*, however, the Circuit has clarified that in both *Yapp* and *Clark*, "the facts giving rise to the second lawsuit-termination in both cases-were in existence at the time the first suit was filed." *See Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1202 (10th Cir.2000). The Circuit expressly agreed with "those courts holding the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed" and cited to this court's decision in *Johnson v. Board of County Comm'rs of Johnson County, Kansas*, 1999 WL 1423072, at *3–4 (D.Kan. Dec.9, 1999). *See id.* at 1202–03.

In *Johnson*, this court was faced with nearly identical circumstances as those presented here. The plaintiff in *Johnson* filed his first lawsuit alleging race and gender discrimination and that case was assigned to Judge VanBebber of this district. *See Johnson*, 1999 WL 1423072, at *1. Four months after the plaintiff filed that suit, his employer allegedly retaliated against him in several respects. *Id.* The plaintiff did not attempt to amend his

complaint or file a supplemental pleading to add a retaliation claim to his lawsuit. Instead, he filed a new charge of discrimination. *Id.* Two months after Judge Van-Bebber entered summary judgment in favor of the defendant on all claims in the first lawsuit, the plaintiff received a notice of right-to-sue with respect to his retaliation claims and filed a second lawsuit. *Id.*

■ The defendant in the second *Johnson* lawsuit filed a motion to dismiss the plaintiff's retaliation claims based on the doctrine of claim preclusion. *See id.* at *2. This court denied the motion and, in doing so, distinguished the Tenth Circuit's decisions in *Yapp* and *Clark* on the grounds that "the facts underlying plaintiff's claims asserted here did not exist at the time plaintiff filed his complaint in *Johnson I.*" *Id.* at *3. As this court went on to explain:

> Because a plaintiff has no obligation to expand his or her suit in order to add a claim that he or she could not have asserted at the time the suit was commenced, several circuits have held that res judicata does not bar a second lawsuit to the extent that suit is based on acts occurring after the first suit was filed.

*Id.* at *3 (citations omitted). Here, it is undisputed that plaintiff's termination claims did not arise until just a few weeks prior to trial in the *Caban* case. For the same reasons set forth by this court in *Johnson*, then, the court rejects defendants' argument that plaintiff's claims in this case are barred by the doctrine of claim preclusion.

Defendants contend that the *Johnson* case is different from this case in one significant respect-the plaintiff in *Johnson* made no attempt to amend his original complaint whereas the plaintiff here, according to defendants, actually asserted his termination claims in the *Caban* suit. The court is not persuaded by defendants' argument. Plaintiff did not attempt to assert in the *Caban* suit any claims arising out his termination. He did not seek leave to amend the pretrial order or any other pleadings to add any claims concerning his termination. Rather, he simply sought to introduce evidence of his termination at the summary judgment stage (in a motion for leave to file a surreply) in an effort to further buttress his present claims for retaliation and discrimination. The motion for leave to file a surreply was denied and there is no evidence that plaintiff ever again raised the issue of his termination in the *Caban* suit. In such circumstances, the court simply cannot conclude that plaintiff's claims concerning his termination were "actually asserted" in the prior suit. Defendants' motion for summary judgment, then, is denied on this issue.

## IV. Merits of Plaintiff's Claims

■ In the pretrial order, plaintiff asserts that defendants terminated his employment on the basis of his race and/or in retaliation for plaintiff's engaging in protected activities (namely, filing a written complaint of race discrimination in February 2001 and participating in the *Caban* suit). The basic allocation of burdens for both a disparate treatment claim and a retaliation claim are set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Wells v. Colorado Dept. of Transp.,* 325 F.3d 1205, 1212 (10th Cir.2003) (retaliation context); *Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1315 (10th Cir.1999) (disparate treatment context). Under the *McDonnell Douglas* framework, plaintiff, with respect to his Title VII discriminatory discharge claim, has the initial burden of establishing a prima facie case of discrimination, which requires him to show that he is a member of the class protected by the statute; that he suffered an adverse employment action; that he was qualified for the position at issue; and that the position

was not eliminated after plaintiff's discharge. *See Perry v. Woodward,* 199 F.3d 1126, 1140–41 (10th Cir.1999). With respect to his retaliation claim, plaintiff establishes a prima facie case by showing that he engaged in protected opposition to discrimination; he suffered an adverse employment action; and there is a causal connection between the protected activity and the adverse employment action. *See Wells,* 325 F.3d at 1212 (citation omitted).

If he establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *See id.* If defendant offers a legitimate, nondiscriminatory reason for its actions, the burden reverts to plaintiff to show that defendant's proffered reason was a pretext for discrimination. *See id.*

### A. Prima Facie Case

In their motion for summary judgment, defendants contend that plaintiff has failed to establish a prima facie case of discriminatory discharge because plaintiff was clearly not qualified for the position (in light of the permanent restrictions on his physical abilities) and because plaintiff has no evidence that similarly situated employees outside the protected class were treated more favorably than plaintiff. They further assert that plaintiff cannot establish a prima facie case of retaliation because plaintiff cannot show the requisite causal connection between his protected activity and his discharge. As explained below, the court rejects all of these arguments.

#### 1. Discriminatory Discharge

Defendants maintain that plaintiff cannot establish that he was qualified for the deputy position in light of the permanent restrictions on his physical abilities and plaintiff's alleged admission that he could not perform all of the essential functions of his position. However, defendants also as-

sert that plaintiff's permanent restrictions and his alleged admission concerning his inability to perform the essential functions of his position were the reasons for defendants' decision to terminate plaintiff's employment. In essence, then, defendants urge the court to consider their proffered nondiscriminatory reasons for their employment decision in connection with analyzing plaintiff's prima facie case. Stated another way, defendants suggest that plaintiff must disprove defendants' proffered reasons for their employment decision in order to establish his prima facie case.

As the Tenth Circuit has recognized, such a legal analysis would inappropriately short-circuit the *McDonnell Douglas* framework at the prima facie stage and frustrate plaintiff's ability to establish that defendants' proffered reasons are pretextual. *See, e.g., EEOC v. Horizon/CMS Healthcare Corp.,* 220 F.3d 1184, 1192–94 (10th Cir.2000) (and cases cited therein). Thus, the court will not analyze defendants' assessment of plaintiff's qualifications at the prima facie stage. Rather, for purposes of assessing plaintiff's prima facie case, the court need only conclude that plaintiff has shown through credible evidence, including his own testimony, that he was at least minimally qualified for the position he held, even if defendants dispute that evidence. *See id.* at 1193–94. Here, plaintiff has come forward with evidence, primarily his own testimony, that he was qualified for the detention deputy position despite his physical limitations and that defendants successfully accommodated his restrictions for years without incident. Thus, defendants' argument concerning the "qualified" prong of plaintiff's prima facie case is rejected.

The court turns, then, to defendants' argument that plaintiff cannot establish a prima facie case of discriminatory dis-

charge because he has no evidence that similarly situated employees outside the protected class were treated more favorably. This argument is easily rejected as the Tenth Circuit has expressly held that a plaintiff is not required to come forward with evidence of similarly situated employees to establish the fourth prong of the prima facie case. *See id.* at 1195 n. 6 ("Nothing in the case law in this circuit *requires* a plaintiff to compare herself to similarly situated co-workers to satisfy the fourth element of her prima facie case."). Rather, plaintiff can satisfy the fourth element in a number of ways, including by showing that his position was not eliminated. *See id.* (citing *Perry v. Woodward,* 199 F.3d 1126, 1140 (10th Cir.1999)). Plaintiff has satisfied this prong, then, as the record clearly reflects that the detention deputy position was not eliminated after plaintiff's discharge.

### 2. Retaliation

■ According to defendants, summary judgment is appropriate on plaintiff's retaliation claim because plaintiff cannot establish a prima facie case of retaliation-namely, he cannot establish a causal connection between his protected activity and defendant's decision to terminate his employment. As an initial matter, defendant contends that plaintiff "admits Sheriff Steed fired him because he could not perform the essential elements of his job" and that plaintiff's admission is fatal to his claim. Defendants, however, misconstrue plaintiff's testimony on this point. Plaintiff did not "admit" in his deposition that defendants terminated his employment for legitimate reasons. He simply agreed with defendants' counsel that the "County's position" was that plaintiff's employment was terminated because he could not perform the essential functions of his job. This argument, then, lacks merit.

■ Defendants also assert that plaintiff's protected activity is simply too remote in time to support any causal connection. This argument, too, is rejected. Plaintiff's evidence demonstrates that he submitted to Sheriff Steed on February 28, 2001 a written complaint of racial discrimination. Four weeks later, on March 27, 2001, Sheriff Steed advised plaintiff that he was recommending the termination of plaintiff's employment, subject to an employment status hearing scheduled for April 3, 2001. Moreover, Sheriff Steed's recommendation occurred just five weeks before the trial in the *Caban* case was scheduled to begin. In these circumstances, the court concludes that the temporal proximity between plaintiff's protected activities (both the February 28, 2001 complaint and the May 2001 trial of the case in which plaintiff was a party and was scheduled to testify) and his termination (or the recommendation concerning his termination) is close enough that a reasonable jury could infer that a causal connection existed. *See Anderson v. Coors Brewing Co.,* 181 F.3d 1171, 1179 (10th Cir. 1999) (a one and one-half month period between protected activity and adverse action may, by itself, establish causation) (citing *Ramirez v. Oklahoma Dep't of Mental Health,* 41 F.3d 584, 596 (10th Cir.1994)); *see also Sauers v. Salt Lake County,* 1 F.3d 1122, 1128 (10th Cir.1993) ("Action taken against an individual in anticipation of that person engaging in protected opposition to discrimination is no less retaliatory than action taken after the fact; consequently, we hold that this form of preemptive retaliation falls within the scope of 42 U.S.C. § 2000e–3(a).").

### B. The Pretext Analysis

■ As plaintiff has established a prima facie case with respect to his discriminatory discharge and retaliation claims, the burden shifts to defendants to articulate a

legitimate, nondiscriminatory reason for their decision. *See English v. Colorado Dep't of Corrections,* 248 F.3d 1002, 1008 (10th Cir.2001) (citing *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). According to defendants, Sheriff Steed initially recommended the termination of plaintiff's employment because of his assessment that plaintiff was unable to perform the essential functions of the detention deputy position in light of the permanent restrictions on plaintiff's physical activities. Defendants further assert that Sheriff Steed ultimately followed through with the initial recommendation after the employment status hearing because plaintiff admitted during that hearing that he could not perform the essential functions of his job. Defendants have satisfied their "exceedingly light" burden to provide nondiscriminatory reasons for their actions. *See Anaeme v. Diagnostek, Inc.,* 164 F.3d 1275, 1279 (10th Cir.1999).

■ Plaintiff, then, may resist summary judgment only by presenting evidence that defendants' reasons are pretextual (*i.e.,* unworthy of belief) or by otherwise introducing evidence of a discriminatory motive. *See Danville v. Regional Lab Corp.,* 292 F.3d 1246, 1250 (10th Cir.2002) (citing *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1137 (10th Cir.2000)). Pretext "can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Id.* (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997)). When assessing whether plaintiff has made an appropriate showing of pretext,

the court considers the evidence as a whole. *Id.* (citation omitted). As explained below, the court concludes that plaintiff has satisfied his burden with respect to his retaliation claim but not with respect to his discriminatory discharge claim. Thus, a trial is required on plaintiff's retaliation claim and summary judgment in favor of defendants is granted with respect to plaintiff's race discrimination claim.

Defendants assert that plaintiff's employment was terminated because plaintiff was unable to perform the essential functions of the detention deputy position in light of his permanent physical restrictions and because he admitted as much during the employment status hearing.[2] It is uncontroverted, however, that defendants accommodated plaintiff's restrictions for nearly 8 years and that defendants knew that plaintiff's restrictions were permanent. Moreover, there is no evidence in the record that defendants had any difficulty whatsoever accommodating plaintiff's restrictions or that defendants at any time during that 8-year period believed that plaintiff could not perform the essential functions of the detention deputy position. While defendants concede these points, they urge that they accommodated plaintiff during the tenure of other sheriffs, but that when Sheriff Steed took office in 2001, he decided to begin enforcing a policy whereby the Department would not retain any employee who had permanent physical restrictions that limited his or her ability to do his or her job. According to defendants, then, plaintiff's restrictions became an issue in the spring of 2001 because, literally, there was a "new sheriff in town."

■ While a reasonable jury could certainly conclude that it was well within

---

**2.** As explained in the Statement of Facts, plaintiff did not admit that he could not perform the essential functions of his job; he

simply agreed that he could not perform each post within the detention deputy job.

Sheriff Steed's prerogative to begin enforcing such a policy upon taking office and to terminate plaintiff's employment in light of the policy, a reasonable jury could similarly find that when Sheriff Steed took office, he quickly realized (or was advised) that plaintiff had a well-documented history of complaining about alleged discrimination in the workplace and, thus, that Sheriff Steed may have perceived plaintiff as a troublemaker and began taking steps to get rid of plaintiff under the guise of enforcing the policy (the enforcement of which, at least at that time, impacted only plaintiff). In other words, it is entirely possible in light of the timing of plaintiff's discharge (just before the *Caban* trial and just after plaintiff complained again about racial discrimination) that Sheriff Steed was simply looking for an excuse to terminate plaintiff's employment. This is particularly true where the evidence demonstrates that the Department, shortly after Sheriff Steed took office, began "investigating" plaintiff's medical history and the nature of his restrictions without any explanation as to why Sheriff Steed decided to start enforcing a "no permanent restrictions" policy or as to what else might have spurred the sudden investigation into plaintiff's medical history. There is, for example, no evidence that Sheriff Steed, upon taking office, conducted a review of all detention deputies and determined that too many deputies were working with permanent physical restrictions or that the accommodation of such restrictions was somehow detrimental to the safety of employees or inmates. Moreover, the fact that plaintiff was the only employee discharged as a result of Sheriff Steed's policy (at least as of April 2001) also casts doubt on whether Sheriff Steed was genuinely concerned about employees with permanent physical restrictions or whether he was looking for a way to "legitimately" single out plaintiff and terminate his employment. In sum, the timing of plaintiff's

discharge, coupled with Sheriff Steed's sudden inquiry into plaintiff's medical history, requires a jury trial on plaintiff's retaliation claim.

■■■ That having been said, however, the court concludes that plaintiff has failed to come forward with sufficient evidence of pretext with respect to his claim that his discharge was based on his race. As explained above, defendants' stated reasons for terminating plaintiff's employment are suspicious because of the timing of that decision and its proximity to plaintiff's protected activities-just after plaintiff made a complaint of race discrimination and just before the *Caban* trial. The timing of the decision, however, has no obvious relationship to plaintiff's race and plaintiff has shown no such relationship. For example, there is no evidence that Sheriff Steed, upon taking office, took efforts to discharge other African–American employees (and other African–Americans were employed in the Department). Again, only plaintiff was singled out for discharge. Plaintiff has come forward with no evidence that anyone in the Department, including Sheriff Steed, bore any animus toward him because of his race. Rather, the evidence suggests only that plaintiff had a long history of complaining about discrimination in the workplace and that these complaints came to a head in the spring of 2001 with the *Caban* trial. For this reason, plaintiff's retaliation claim survives summary judgment but plaintiff's race discrimination claim does not. Summary judgment in favor of defendants, then, is granted with respect to plaintiff's claim of race discrimination.

## V. Plaintiff's Remedies and the After-Acquired Evidence Doctrine

Finally, defendants move for summary judgment to the extent plaintiff seeks reinstatement or front pay on the grounds that

they discovered, after plaintiff's discharge, that he had engaged in misconduct of such severity that plaintiff in fact would have been terminated on those grounds alone if defendants had known of the wrongdoing at the time of plaintiff's discharge. *See McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 362–63, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). According to defendants, plaintiff admitted during the course of discovery that he deliberately omitted from his employment application any reference to his prior military service. Defendants also highlight that at least two other detention deputies were discharged for providing false and/or incomplete information on their employment applications. Defendants, however, direct the court to no evidence suggesting that defendants would have in fact terminated plaintiff's employment based on the omission from his employment application. Moreover, defendants have not provided to the court any circumstances surrounding the alleged misrepresentations of the other two detention deputies who were apparently terminated for such misrepresentations such that the court could compare those employees to plaintiff's situation.

In short, defendants have wholly failed to show that they are entitled to summary judgment on this issue and genuine issues of material fact exist as to whether plaintiff's wrongdoing was serious enough that defendants in fact would have discharged plaintiff on that basis alone if they had known about the wrongdoing at the time of plaintiff's discharge. *See id.*

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion for summary judgment (doc. # 77) is granted in part and denied in part.

IT IS SO ORDERED.