**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 1 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

### UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

---

CHARLES F. ADAMS; MARION E.
ADAMS; EDWARD YENKINSON;
ALAN WATTS; GERTRUDE
NICHOLSON; BENJAMIN
FRIEDMAN; EDWARD J.
LACKNER; ALICE GALLAHER;
DONALD GALLAHER; DONALD
SAFER; ALAN WATTS PENSION
PLAN AND TRUST; EDWARD J.
LACKNER INDIVIDUAL
RETIREMENT ACCOUNT;
CASEWORK SYSTEMS, INC.
PROFIT SHARING PLAN AND
TRUST,

     Plaintiffs - Appellants,

vs.

AMERICAN GUARANTEE AND
LIABILITY INSURANCE
COMPANY,

     Defendant - Appellee.

No. 99-1511

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 98-WY-938-CB)

---

Bradley S. Freedberg, Denver, Colorado, for Plaintiffs - Appellants.

Laurence M. McHeffey, McElroy, Deutsch & Mulvaney, Denver, Colorado, for

Defendant - Appellee.

Before **BRORBY**, **MCWILLIAMS**, and **KELLY**, Circuit Judges.

**KELLY**, Circuit Judge.

Plaintiffs-Appellants, various investors in financial transactions dependent on future insurance commissions, appeal from the district court's order granting summary judgment for the Defendant-Appellee, American Guarantee and Liability Insurance Company ("American Guarantee"). Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm.

Background

Plaintiffs' claim against American Guarantee arises out of a complicated series of dealings between Plaintiffs and James Patrick Gregory, an insurance agent that American Guarantee insured under an Errors and Omissions ("E&O") Policy. As the parties are familiar with the facts, we will only briefly restate them here.

A. The Financial Transactions

The Plaintiffs are investors in First Capital Network, Inc. First Capital and Gregory's business, Gregory & Associates, Inc., engaged in a series of financial

transactions, known as "factoring arrangements," in which First Capital would pay Gregory & Associates 65 to 70 percent of its expected insurance commissions up front, and in return, First Capital would receive the rights to the commissions paid over time. Gregory and his wife, Linda, the majority shareholders of Gregory & Associates, personally guaranteed payment of the commissions to First Capital. First Capital assigned the rights it had purchased from Gregory & Associates to certain of its investors, including the Plaintiffs.

By 1994, the factoring arrangement between Gregory & Associates and First Capital had become less stable. The factoring arrangement began to include not only commissions payable on insurance contracts Gregory & Associates had already obtained, but also commissions on insurance contracts that Gregory & Associates hoped to obtain in the future. When Gregory & Associates failed to obtain these future insurance contracts, the factoring arrangement began to falter and by April 1995, Gregory & Associates could not pay First Capital all the money it was owed. By December 1995, Gregory & Associates ceased making any payments to First Capital. Gregory & Associates still owed Plaintiffs approximately $968,000.

B. The Insurance Policies

Until October 1, 1995, Gregory & Associates had a professional liability insurance policy (an E&O policy) from Employers Reinsurance Corporation

("Employers"). Gregory & Associates never notified Employers of its ongoing financial difficulties because Gregory did not think that the Employers' E&O coverage applied to the factoring arrangements between his company and First Capital. When the Employers' coverage expired, Gregory tried to negotiate a renewal contract over the next several months. Gregory and Employers never reached agreement and the Employers' coverage was not renewed. Gregory finally obtained claims-made E&O coverage from American Guarantee, the defendant in this case, effective May 1, 1996 to January 1, 1997. See Aplt. App. at 2-09 (certificate of insurance).

### C. The Litigation

In July 1996, plaintiffs filed a civil suit against Gregory & Associates, Gregory, and Linda Gregory in Arapahoe County court for negligence, breach of warranty, and breach of guaranty. See Aplt. App. at 2-46 (Plaintiffs' original complaint). Gregory did not inform Employers or American Guarantee of the suit due to his belief that the E&O coverage did not apply to the financial transactions at issue in the case. Plaintiffs' lawyer contacted both Employers and American Guarantee in August 1996 to inform them of the suit. See Aplt. App. at 2-44; Aple. Supp. App. at 3-91. Employers denied coverage, stating that Gregory's actions towards Plaintiffs had no relation to the rendering of professional services as an insurance agent. See Aple. Supp. App. at 3-91. American

- 4 -

Guarantee contacted Gregory requesting information about the suit.        See Aplt. App. at 8-09. Gregory responded by reiterating his belief that Plaintiffs' claims had nothing to do with Gregory's E&O coverage.        See Aple. Supp. App. at 3-139. American Guarantee did not tender a defense to Gregory in the Arapahoe County suit.

In October 1996, Pat and Linda Gregory filed for bankruptcy.  Soon after, in November 1997, Gregory and the Plaintiffs entered into a Stipulation and Settlement Agreement.    See Aple. Supp. App. at 3-141.  In return for Plaintiffs agreeing to release Gregory & Associates from all claims asserted in Plaintiff's lawsuit, Gregory and his wife agreed to allow Plaintiffs to proceed against them personally in the civil lawsuit in Arapahoe County court.  Plaintiffs also agreed they would not collect any judgment obtained against Gregory in the civil suit from either Gregory or his wife but would proceed only against the E&O policy issued by American Guarantee.    Id. at 3-142.  In March 1997, Plaintiffs released both Gregory and Gregory & Associates from any and all causes of action for fraud, bad-faith conduct, or for any other non-dischargeable claims under the Bankruptcy Code.  In return, Gregory assigned all his rights, if any, under the American Guarantee E&O policy to the Plaintiffs.    See Aplt. App. at 2-30.

In line with their agreement, the Plaintiffs continued to proceed only against Gregory personally in the civil lawsuit.  In March 1998, after filing a

- 5 -

motion for summary judgment, the Plaintiffs obtained a judgment against Gregory in the Arapahoe County District Court. See Aplt. App. at 2-37. Gregory did not actively defend himself but simply sent a letter to the court, reminding the court that the judgment could not be used against him personally but would allow the Plaintiffs to proceed against American Guarantee. See Aple. Supp. App. at 3-173. The court's final judgment in the case expressly stated this limitation. See Aplt. App. at 2-43.

Plaintiffs filed suit against American Guarantee in state court in April 1998. See Aple. Supp. App. at 3-64. American Guarantee removed the case to federal court based on diversity jurisdiction. See Aplt. App. at 3-1. Plaintiffs argued that Gregory had been professionally negligent in his role as an insurance agent and, therefore, that the American Guarantee E&O policy should cover Plaintiffs' losses. American Guarantee defended by arguing (1) the "known loss" doctrine precluded coverage and (2) Gregory did not qualify for coverage because he failed to meet the terms of the insurance contract that required him to maintain continuous and uninterrupted E&O coverage from before the time the acts or omissions giving rise to the suit occurred.

The trial court held that the known loss doctrine did not preclude Gregory from coverage, but granted American Guarantee's motion for summary judgment on the issue that Gregory had let his E&O coverage lapse in violation of his

American Guarantee insurance contract. <u>See</u> Aplt. App. at 7-01. On appeal, Plaintiffs argue that the district court misapplied the standard for summary judgment by disregarding Plaintiffs' evidence that Gregory maintained continuous E&O coverage. <u>See</u> Aplt. Br. at 12-14. In addition, Plaintiffs argue that American Guarantee should be estopped from denying coverage as American Guarantee had accepted an October 23, 1996 letter from Gregory as "proof" that he had maintained continuous coverage. <u>Id.</u> at 18-19. Defendant-Appellee American Guarantee asks this court not only to affirm the grant of summary judgment on the basis of Gregory's coverage lapse, but to consider the doctrine of "known loss" as an alternative grounds for affirmance. <u>See</u> Aple. Br. at 17-18. As we find the issue of the sufficiency of Plaintiffs' evidence to be dispositive, we decline to reach the "known loss" issue.

<u>Discussion</u>

Of Plaintiffs' two arguments on appeal, we first address Plaintiffs' argument that the district court misapplied the standard for summary judgment. We review a grant of summary judgment de novo. <u>Equal Employment Opportunity Comm'n v. Horizon/CMS Healthcare Corp.</u>, 220 F.3d 1184, 1190 (10th Cir. 2000). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and...the moving party is entitled to judgment as a

matter of law." FED. R. CIV. P. 56(c). A fact is "material" if under the substantive law it could have an effect on the outcome of the lawsuit. Horizon/CMS Healthcare Corp., 220 F.3d at 1190. An issue is "genuine" if "a rational jur[or] could find in favor of the nonmoving party on the evidence presented." Id. In conducting our review, we view the factual record and draw any reasonable inferences therefrom in the light most favorable to the nonmoving party. Adler Wal-Mart Stores, Inc., 144 F.3d 664, 670 (10th Cir. 1998).

The district court granted American Guarantee's motion for summary judgment on the lapse issue. The issue had been raised by American Guarantee in response to a motion for partial summary judgment by Plaintiffs. Aplt. App. at 5-33. American Guarantee bears the burden of showing that no genuine issue of material fact exists. Adler, 144 F.3d at 670. Because it does not bear the ultimate burden of persuasion at trial, however, it does not have to negate the nonmovant's claim, but may meet its burden by "pointing out to the court a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." Id. at 671. Once the movant meets its initial burden, the nonmovant "must do more than refer to allegations of counsel contained in a brief to withstand summary judgment. Rather, sufficient evidence (pertinent to the material issue) must be identified by reference to an affidavit, a deposition transcript or a specific exhibit incorporated therein." Thomas v. Wichita Coca-

Cola Bottling Co., 968 F.2d 1022, 1024 (10th Cir. 1992). Evidence is sufficient to withstand summary judgment if it is significantly probative and would enable a trier of fact to find in the nonmovant's favor.

In order to survive summary judgment, the content of the evidence that the nonmoving party points to must be admissible. See Wright-Simmons v. City of Oklahoma City, 155 F.3d 1264, 1268 (10th Cir. 1998) ("'It is well settled in this circuit that we can consider only admissible evidence in reviewing an order granting summary judgment.'") (quoting Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1541 (10th Cir. 1995)). The nonmoving party does not have to produce evidence in a form that would be admissible at trial, but "'the content or substance of the evidence must be admissible.'" Wright-Simmons, 155 F.3d at 1268 (quoting Thomas v. Int'l Bus. Machines, 48 F.3d 478, 485 (10th Cir. 1995)). Hearsay testimony that would be inadmissible at trial cannot be used to defeat a motion for summary judgment because "a third party's description of a witness' supposed testimony is 'not suitable grist for the summary judgment mill.'" Wright-Simmons, 155 F.3d at 1268 (quoting Thomas, 48 F.3d at 485).

In this case, in order for Plaintiffs to prevail, Plaintiffs must make a showing that American Guarantee's E&O policy provides coverage for Gregory's acts or omissions that led to Plaintiffs' financial losses. The American Guarantee policy was effective from May 1, 1996 to January 1, 1997. See Aplt. App. at 2-

09 (certificate of insurance). Section III of American Guarantee's policy reads, in pertinent part:

III. TERRITORY AND CLAIMS-MADE PROVISIONS

This Policy applies to acts, errors, omissions or PERSONAL INJURIES which occur anywhere in the world provided that CLAIM is made against the INSURED in the United States of America, its territories or possessions and provided further that such acts, errors, omissions or PERSONAL INJURIES occurred:

A. During the POLICY PERIOD, and then, only if CLAIM is first made against the INSURED during the POLICY PERIOD and is reported to the Company, in writing, during the POLICY PERIOD ....

B. Prior to the effective date of this Policy, provided that:

. . .

3. CLAIM is first made against the NAMED INSURED during the POLICY PERIOD and is reported to the Company, in writing, during the POLICY PERIOD. . . and,

4. the acts, errors, omissions or PERSONAL INJURY occurred after the retroactive date indicated on the Declarations page.

See Aplt. App. at 2-12 to 2-13.

American Guarantee is obligated to provide E&O coverage under the plain language of Section III(A) of the policy when both the act, error, or omission and the claim itself occurred during the policy period. Gregory's policy with American Guarantee was effective from May 1, 1996 to January 1, 1997. Plaintiffs do not contend that Gregory committed any act, error, or omission during the policy period. See Aplt. App. at 2-52. Therefore, there is no coverage under this section of the insurance contract.

Section III(B) of the insurance contract is at the heart of this disagreement. For coverage to exist under Section III(B), not only must the claim be made during the policy period, § III(B)(3), but Gregory's act, error, or omission must have occurred "after the retroactive date indicated on the Declarations page," § III(B)(4). In Endorsement No. 1 to the policy, this retroactive date is defined as "[t]he inception date of the first continuous claims-made Life Insurance Agent's Errors and Omissions Liability Policy which has been maintained inforce without interruption." Aplt. App. at 2-20. This means that, assuming all other conditions are met, Gregory has coverage under the American Guarantee policy back to the date when Gregory first purchased E&O coverage, regardless of who issued the policy, as long as Gregory experienced no breaks in coverage. If a lapse in coverage occurs, the retroactive date shifts forward in time to the date Gregory

once again obtained E&O coverage after the lapse.

There is no dispute that Plaintiffs notified American Guarantee of their claim during the policy period, thus meeting the requirement of Section III(B)(3) of the policy. The dispute centers around whether Gregory experienced a lapse in coverage before obtaining coverage with American Guarantee. American Guarantee points to evidence in the record that Gregory's prior claims-made E&O policy from Employers expired on October 1, 1995. Specifically, American Guarantee relies on the October 23, 1996 letter Gregory sent to them in which he states that his Employers coverage terminated retroactively to October 1, 1995. See Aple. Br. at 20-21; Aplt. App. at 5-29;    see also  Aple. Supp. App. at 3-91 (letter from Employers stating coverage terminated October 1, 1995). Because Gregory did not obtain coverage from American Guarantee until May 1, 1996, American Guarantee asserts the following:  Gregory experienced a lapse in coverage from October 1, 1995 to May 1, 1996. This lapse has the effect of setting the retroactive date for coverage under American Guarantee's policy at May 1, 1996, the date Gregory first obtained E&O coverage after the lapse. Since Gregory's acts, errors, or omissions that gave rise to the suit all occurred well before May 1, 1996, American Guarantee's policy affords no coverage under § III(B)(4). See Aple. Br. at 21-23.

Plaintiffs argue that Gregory did not experience a lapse in coverage and

that the district court overlooked their evidence of continuous coverage when granting American Guarantee's motion for summary judgment. See Aplt. Br. at 12-14. Plaintiffs assert that during the months Gregory was attempting to negotiate a renewal policy with Employers, the Employers agent represented to Gregory that he still had E&O coverage. When Gregory and Employers failed to reach an agreement on a renewal policy, Employers terminated his insurance retroactively to October 1, 1995. Although Gregory maintains that coverage was terminated retroactively, Plaintiffs argue that this does not change the fact that Gregory had E&O insurance during the negotiations period and, therefore, did not experience a break in coverage. See Aplt. Br. at 15-18.

Plaintiffs rely upon two pieces of evidence that they assert prove Gregory maintained continuous E&O coverage. First, Plaintiffs point to Gregory's October 23, 1996 letter to American Guarantee in which Gregory states his Employers policy was terminated retroactively to October 1, 1995, but also that "[d]uring a few months of negotiation at renewal time, we had not terminated the coverage, however since we did not renew, coverage was terminated retroactively." Aplt. App. at 5-29 (emphasis in original). Second, Plaintiffs rely on Gregory's deposition in which he states:

> [D]uring that time, they said – they still covered us under E&O, according to them, and we were trying to determine a new premium....[F]rom our

perspective of them actually cancelling [sic], it was sometime probably in the – end of the first quarter or second quarter of '96 before that was actually determined.

Aplt. App. at 8-14. Mr. Gregory could not identify the name of the agent that led him to believe he had continuous coverage during the negotiation period.     Id. at 8-16 to 8-17.

Plaintiffs' evidence is not sufficient to withstand summary judgment. Regarding Gregory's October 23, 1996 letter, Plaintiffs miss the point. The issue is not whether Gregory    thought  he had insurance coverage, but whether Gregory actually  had  coverage from October 1, 1995 to May, 1996.  Gregory's statement that he believed he was covered during the negotiations period is irrelevant.

Plaintiffs' other piece of evidence, Gregory's deposition testimony that an Employers agent told him that he was covered during the negotiations period, is inadmissible hearsay.    See FED. R. EVID. 801 & 802.  We understand Plaintiffs' theory, developed in their reply brief, that coverage might have been extended through an oral contract and/or based upon the apparent authority of unnamed agents of another organization (NALU) brokering for Employers, but Employers is not a party to this suit.    See id. 801(d)(2) (admission of a party-opponent not hearsay).  Plaintiffs do not argue that the unnamed agents are unavailable and have not suggested any other theory of admissibility.  Assuming that an argument

- 14 -

raised for the first time in a reply brief is sufficient, which it is not, Adler, 144 F.3d at 679, Plaintiffs' argument fails because it is not backed with admissible evidence in the record. Therefore, summary judgment was proper.

Plaintiffs' final argument on appeal is that American Guarantee should be estopped from denying coverage as American Guarantee accepted an October 23, 1996 letter from Gregory as "proof" of continuous coverage. Plaintiffs contend that estoppel should apply to the issue of continuous coverage because "Defendant accepted as 'satisfactory' the proof [the October 23, 1996 letter] Gregory supplied of his coverage history, and after denial and the inception of the instant case, Defendant could no more challenge the Employers policy as it could any other policy lying in the chain of policies from the date of loss until the effective date of the policy with Defendant." Aplt. Br. at 18-19. This is the extent of Plaintiffs' argument, made without benefit of authority on estoppel; it is insufficiently developed for appeal. See Koch v. Koch Indus., Inc., 203 F.3d 1202, 1238-39 (10th Cir.), cert. denied, 2000 WL 1201643 (Oct. 10, 2000); Adler, 144 F.3d at 679 (stating "[a]rguments inadequately briefed in the opening brief are waived"); FED. R. APP. P. 28(a)(9). Moreover, under Colorado law, the doctrine of promissory estoppel requires the party to be estopped to make "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee...." Bd. of County Comm'rs of Summit

County v. DeLozier, 917 P.2d 714, 716 (Colo. 1996) (en banc). To establish a claim of equitable estoppel under Colorado law, the party to be estopped must make a misstatement of fact. Id. Plaintiffs have failed to point to any promise or misstatement of material fact made by American Guarantee in the record that led to the insured's detrimental reliance, let alone that of the Plaintiffs. Plaintiffs' estoppel claim thus fails.

Plaintiffs have failed to raise a genuine issue of material fact regarding an essential element of their prima facie case–whether there was coverage under the American Guarantee E&O policy. The only admissible evidence in the record reflects that Gregory's Employers insurance contract expired October 1, 1995 and that he did not obtain subsequent E&O coverage until May 1, 1996. Due to this lapse in coverage, the American Guarantee policy only covers acts, errors, or omissions that occurred after May 1, 1996 until the end of the policy period. Because Gregory's acts, errors, or omissions that led to Plaintiffs' claims occurred well before May 1, 1996, there is no coverage under the American Guarantee policy.

AFFIRMED.