**Cami V. OWENS, Plaintiff,**

v.

**SPRINT/UNITED MANAGEMENT COMPANY, Defendant.**

No. 03–2371–JWL.

United States District Court, D. Kansas.

Aug. 23, 2004.

Dennis E. Egan, Stephen J. Dennis, Bert S. Braud, The Popham Law Firm, P.C., Kansas City, MO, for Plaintiff.

Chris R. Pace, Overland Park, KS, Christine F. Miller, James F. Monafo, Husch & Eppenberger, LLC, St. Louis, MO, David M. Eisenberg, Baker, Sterchi, Cowden & Rice, L.L.C., Patrick F. Hulla, John J. Yates, Husch & Eppenberger, LLC, Kansas City, MO, for Defendant.

### MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff Cami Owens worked for defendant Sprint/United Management Company ("Sprint") in the position of Director of International Service Management ("Director/ISM") from 1997 through September 2002. At that time, Sprint decided to relocate the Director/ISM position from Overland Park, Kansas (where plaintiff resides) to Reston, Virginia and, in doing so, removed plaintiff from the position and assigned a younger male, Scott Barli, to the position. According to Sprint, it removed plaintiff from the position and offered the position to Mr. Barli because plaintiff did not want to relocate to Reston. According to plaintiff, while she advised Sprint that she preferred to remain in Kansas, she ultimately expressed to Sprint that she was willing to relocate to Reston if necessary to keep her current position of Director/ISM. Thus, plaintiff asserts that defendant's stated reason for removing her from the position is pretextual and that Sprint removed plaintiff from the Director/ISM position on the basis of her age in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq., and/or on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. This matter is presently before the court on defendant's motion for summary judgment on plaintiff's claims (doc. # 79). As set forth in more detail below, the motion is denied.

### I. Facts

The following facts are either uncontroverted or related in the light most favorable to plaintiff, the nonmoving party. Plaintiff, in the Director/ISM position, was responsible for managing the daily operational performance of a company called Equant, one of Sprint's international vendors. Although plaintiff worked and lived in the Kansas City area, Equant was located in Reston, Virginia and the vast majority of the business unit in which plaintiff was employed was located in Reston.[1] During the summer of 2002, Tim McKinley, the Vice President of Sprint's Business Support Solutions ("BSS") organization (which included plaintiff's ISM department), began making numerous changes to the BSS organization in an effort to obtain better cost efficiencies. As a part of this overall reorganization, Mr. McKinley began considering the possibility of moving the Director/ISM position from Overland Park to Reston because the primary vendor was located in Reston and the majority of the ISM department was already located in Reston.

On or about September 13, 2002, Mr. McKinley contacted Mike Reilly, plaintiff's supervisor, to discuss whether plaintiff might be willing to relocate to Reston in the event that Mr. McKinley decided to move the Director/ISM position to Reston. Mr. Reilly advised Mr. McKinley that he did not know whether plaintiff would be willing to relocate but that he would discuss the situation with her and get back to Mr. McKinley. According to Mr. Reilly, Mr. McKinley told him during this meeting

---

1. Indeed, Sprint maintains a significant business presence in Reston although Sprint's headquarters are located in Overland Park, Kansas.

that another current employee, Scott Barli, would be willing to relocate and fill the position "if need be." Later that day, Mr. Reilly met with plaintiff. According to plaintiff, Mr. Reilly told her that Sprint was considering moving her position, but that it was "nothing firm" and he simply wanted to have a "very informal, off-the-record discussion" with plaintiff about how she would feel about moving to Reston in the event that Sprint decided to move the position there. Plaintiff advised Mr. Reilly that she wanted to talk to her husband about it and that she would give him an answer on Monday.

On Monday, September 16, 2002, plaintiff advised Mr. Reilly that she preferred to stay in the Kansas City area but that she would relocate to Reston if it was necessary to keep her position. According to plaintiff, she made it clear to Mr. Reilly during this discussion that she would move to Reston if Sprint asked her to do so. She mentioned to Mr. Reilly, however, that she might consider moving to Reston without her family and might ask Sprint to consider allowing her to work in Reston for two weeks each month and in Kansas City for two weeks each month. After meeting with plaintiff, Mr. Reilly sent an e-mail to Mr. McKinley in which he advised Mr. McKinley that plaintiff "really did not want to move" but that she would move without her family if the only other option was getting laid off and facing unemployment. Mr. Reilly also advised Mr. McKinley that plaintiff had proposed a "two weeks here, two weeks there" alternative.

According to Sprint, Mr. McKinley believed based on Mr. Reilly's e-mail that plaintiff did not want to move and, thus, the position was offered on September 25, 2002 to Scott Barli, a younger male who accepted the position immediately. At the time, Mr. Barli was working on a special project for Sprint in Dallas, Texas; the project was winding up and Mr. Barli was facing a layoff in the near future. During the same time frame, Josephine Blagovich, an area Vice President in the BSS organization, advised Mr. McKinley that she needed someone to help complete various projects for Sprint in Overland Park. Ms. Blagovich expected the projects (and, thus, the position) to last approximately three to six months, although it was possible the position could turn into a permanent position. Mr. McKinley decided to offer this "special projects" position to plaintiff because the position was in Kansas City.

On September 26, 2002, Mr. Reilly met with plaintiff and told her that the Director/ISM position was going to be moved to Reston and that the position would be filled by Scott Barli. Plaintiff had not heard anything about the relocation of the position since her September 16, 2002 meeting with Mr. Reilly. In other words, plaintiff had not been advised that Sprint had actually decided to move the position until she was advised that she was being replaced by Mr. Barli. During the September 26, 2002 meeting, Mr. Reilly informed plaintiff that she would be given the special projects position and that she would report to Ms. Blagovich. Mr. Reilly cautioned plaintiff that there were no guarantees as to the length of the special assignment so she should begin looking for a permanent position immediately. The special projects position carried the same benefits and salary as plaintiff's Director/ISM position.

Plaintiff assumed her new position effective November 1, 2002 and she remained in that position until March 31, 2003, at which time the position was eliminated in that Sprint had only budgeted five months for the position. During the time she held the special projects position, plaintiff made efforts to obtain a permanent Director position but was unable to obtain such a

position. On April 1, 2003, plaintiff accepted a Group Manager position (a position that is below the director-level position and, consequently, provides a lower salary and fewer benefits) and she remains in that position. Plaintiff's former Director/ISM position was eliminated effective October 1, 2003 and Mr. Barli obtained another director-level position at that time. The duties that plaintiff and Mr. Barli performed as Director/ISM are now performed by a Group Manager, the same job title that plaintiff holds today.

Additional facts will be provided as they relate to plaintiff's particular claims.

## II. Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir.2002). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kansas v. Abbott Laboratories, Inc.,* 259 F.3d 1226, 1231–32 (10th Cir.2001) (citing *Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 670 (10th Cir.1998)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Adler,* 144 F.3d at 670 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Spaulding,* 279 F.3d at 904 (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Adams v. American Guarantee & Liability Ins. Co.,* 233 F.3d 1242, 1246 (10th Cir.2000) (citing *Adler,* 144 F.3d at 671).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Spaulding,* 279 F.3d at 904 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *accord Eck v. Parke, Davis & Co.,* 256 F.3d 1013, 1017 (10th Cir.2001). Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Mitchell v. City of Moore, Oklahoma,* 218 F.3d 1190, 1197–98 (10th Cir.2000) (quoting *Adler,* 144 F.3d at 671). To accomplish this, the facts "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibits incorporated therein." *Adams,* 233 F.3d at 1246.

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and in-expensive determination of every action." *Celotex,* 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1); *see also Kaster v. Safeco Ins. Co. of Am.,* 2003 WL 22854633, at *2 (10th Cir.2003) (affirming

the district court's grant of summary judgment in favor of defendant in an ADEA case where the plaintiff had failed to present evidence sufficient for a reasonable jury to conclude that Safeco's employment decisions were age-related); *Young v. White,* 71 Fed.Appx. 819, 820, 2003 WL 21940941, at *1–2 (10th Cir.2003) (affirming district court's grant of summary judgment in favor of defendant in race discrimination and retaliation context).

## III. Discussion

Plaintiff asserts that Sprint discriminated against her on the basis of her age and/or her gender when it removed her from the Director/ISM position and placed her in the "special projects" position. The basic allocation of burdens for a disparate treatment claim is set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* framework, plaintiff has the initial burden of establishing a prima facie case of discrimination, which requires her to show that she is a member of the class protected by the statute; that she suffered an adverse employment action; that she was qualified for the position at issue; and that she was treated less favorably than others not in the protected class or that the adverse action occurred under circumstances giving rise to an inference of discrimination. *See Garrett v. Hewlett Packard Co.,* 305 F.3d 1210, 1221 (10th Cir.2002); *Sanchez v. Denver Pub. Schs.,* 164 F.3d 527, 531 (10th Cir.1998). If she establishes a prima facie case, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *See Sanchez,* 164 F.3d at 531. If defendant offers a legitimate, nondiscriminatory reason for its actions, the burden reverts to plaintiff to show that defendant's proffered reason was a pretext for discrimination. *See id.*

Defendant moves for summary judgment on plaintiff's claims, contending first that plaintiff cannot establish a prima facie case of discrimination. Specifically, defendant maintains that plaintiff did not suffer an adverse employment action as a result of Sprint's decision to move Mr. Barli into the Director/ISM position. Sprint also contends that plaintiff cannot show that defendant's legitimate, nondiscriminatory reason for removing plaintiff from the Director/ISM position and reassigning her to the special projects position is pretextual. As explained more fully below, the court concludes that plaintiff has shown the existence of genuine issues of material fact with respect to her prima facie case of age and gender discrimination. Moreover, the court concludes that plaintiff has come forward with sufficient evidence of pretext to survive summary judgment on both claims.

### A. Plaintiff's Prima Facie Case

■ According to Sprint, summary judgment is warranted on plaintiff's claims because she cannot show that she suffered an adverse employment action as she was "moved into an equivalent director position" as soon as Sprint moved Mr. Barli into the Director/ISM position. The court rejects this argument and readily concludes that genuine issues of material fact exist with respect to whether plaintiff suffered an adverse employment action. While defendant describes plaintiff's new assignment as a "director" position, there is ample evidence in the record that the position was not a director position at all. According to plaintiff, she lost her supervisory responsibilities when she was reassigned to the new position. Although defendant concedes that plaintiff's responsibilities were different in her new position, it contends that the responsibilities were nonetheless "director level" responsibilities. Plaintiff testified, however, that she "sat idle" nearly the entire time

she was in the special projects position because she "was not assigned anything to do." Fact issues exist, then, with respect to whether plaintiff had any real responsibilities in her new position.

Moreover, it is uncontroverted that the position, at the time it was offered to plaintiff, was merely a temporary position and that, while a possibility existed that the position might evolve into a permanent position, that possibility never transpired. In fact, the position was budgeted for only five months and at the end of the five-month period, plaintiff was essentially forced to accept a demotion to the Group Manager position after she was unable to obtain another director-level position. While Sprint urges that plaintiff's Director/ISM position was also a temporary position (because the position was eliminated in October 2003), there is no evidence in the record that at the time Sprint moved plaintiff into the special projects position Sprint knew that the Director/ISM position would be eliminated. In other words, the evidence, viewed in the light most favorable to plaintiff, demonstrates that at the time Sprint took the employment action at issue, Sprint was reassigning plaintiff from a permanent position to a temporary one.

In light of these circumstances, a jury, not the court, must determine whether plaintiff's reassignment to the special projects position was an adverse employment action as that phrase has been interpreted by the Tenth Circuit. *See Stinnett v. Safeway, Inc.*, 337 F.3d 1213, 1217 (10th Cir. 2003) (reassignment may be an adverse employment action when the employee has less responsibility in the new assignment or is required to use a lesser degree of skill than his or her previous assignment); *Dawson v. Abraham*, 29 Fed.Appx. 561,

562–64 (10th Cir.2002) (fact issues remained as to whether agency's transfer of employee was adverse employment action where new position was only temporary and deprived plaintiff of her previous duties and responsibilities).[2] Summary judgment on this issue is denied.

### B. The Pretext Analysis

■ As plaintiff has set forth sufficient evidence to permit a jury to conclude that she suffered an adverse employment action, the burden shifts to defendant to articulate a legitimate, nondiscriminatory reason for its decision. *See English v. Colorado Dep't of Corrections*, 248 F.3d 1002, 1008 (10th Cir.2001). According to Sprint, it moved Mr. Barli into plaintiff's position because plaintiff did not want to relocate or, in Sprint's words, because plaintiff "was extremely reluctant to move." Defendant has satisfied its "exceedingly light" burden to provide nondiscriminatory reasons for its decision. *See Goodwin v. General Motors Corp.*, 275 F.3d 1005, 1013 (10th Cir.2002).

■ Plaintiff, then, may resist summary judgment only by presenting evidence that defendant's reason is pretextual (*i.e.*, unworthy of belief) or by otherwise introducing evidence of a discriminatory motive. *See Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1250 (10th Cir.2002) (citing *Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1137 (10th Cir.2000)). Pretext "can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory rea-

---

**2.** Pursuant to Tenth Circuit Rule 36.3(B)(1), the court cites this unpublished opinion for its persuasive value.

sons." *Id.* (quoting *Morgan v. Hilti, Inc.,* 108 F.3d 1319, 1323 (10th Cir.1997)). When assessing whether plaintiff has made an appropriate showing of pretext, the court considers the evidence as a whole. *Id.* (citation omitted).

The court concludes that the inferences which properly may be drawn from the totality of the circumstances set forth in the record are sufficient for a reasonable jury to conclude that Sprint's decision to remove plaintiff from the Director/ISM position and to reassign her to the special projects position was based, at least in part, on plaintiff's age and/or gender. Viewing the evidence in the light most favorable to plaintiff, Mr. McKinley already had Mr. Barli-whose position in Dallas was about to come to an end-in mind for the Director/ISM position before anyone even asked plaintiff whether she would be willing to relocate to Reston. Moreover, during the one and only discussion that anyone had with plaintiff concerning whether she might be willing to relocate, plaintiff was informed that no final decision had been made and that Sprint was simply wanting an "off the record" sense of how plaintiff would feel about relocating. Plaintiff testified that she advised Mr. Reilly during this discussion that she was willing to relocate to Reston; though she preferred to stay in Kansas City, she would relocate to keep her position. Indeed, plaintiff had relocated for Sprint on other occasions and had even moved to Reston on a prior occasion for Sprint. The evidence reflects that plaintiff was a solid performer as the Director/ISM. Viewing the evidence in the light most favorable to plaintiff, then, there was no reason for Sprint to believe that plaintiff, if provided the opportunity to give a final "yes" or "no" on the relocation question once the decision to move the position was made, would not move to Reston and continue performing well in the position.

Sprint, however, never gave plaintiff the opportunity to make a final decision; indeed, Sprint never advised plaintiff that it had decided to move her position until after it had replaced her with Mr. Barli. In such circumstances, particularly as the evidence suggests that Mr. McKinley had Mr. Barli in mind for the position before anyone talked to plaintiff about relocating, a reasonable jury could conclude that Sprint did not provide plaintiff with an opportunity to give a final answer on the relocation question because Sprint simply wanted to put Mr. Barli in that position. Similarly, a reasonable jury could conclude that Mr. McKinley was inclined to construe any response from plaintiff (short of an unequivocal affirmative response) as a "reluctance" or "unwillingness" to relocate (and not give her an opportunity to give an unequivocal affirmative response) simply because he needed an excuse to move Mr. Barli in the position (curiously, an individual who had no experience or background in the ISM area). To be sure, the court is not suggesting that an employer as a matter of law must give an employee in every instance a formal "take it or leave it" offer, but in the absence of such an exchange occurring between Sprint and plaintiff in this case, a jury must decide why Sprint removed plaintiff from the Director/ISM position and reassigned her to the special projects position.

Defendant asserts that summary judgment is warranted because plaintiff admitted in her deposition that she told Mr. Reilly that she preferred not to move. As explained above, however, this is not necessarily the same as expressing a "reluctance" or "unwillingness" to move, particularly as plaintiff testified that she clearly advised Mr. Reilly that she would relocate to Reston to keep her position. Moreover, when she told Mr. Reilly that she preferred not to move, she did not realize (because Sprint had not advised her) that

her job was in jeopardy or that Sprint had made a final decision to move her position to Reston. Plaintiff was speaking "off the record" as Mr. Reilly had asked her to do. Defendant also contends that summary judgment in its favor is warranted because plaintiff has no evidence that Mr. McKinley had an improper motive when he moved Mr. Barli into the position. In a related vein, defendant contends that plaintiff must show more than pretext in this case-she must come forward with affirmative evidence that her age or sex was a determining factor in Sprint's decision because her pretext evidence is insufficient for a jury to find in her favor. The court rejects these arguments. As set forth above, a reasonable jury could conclude based on the totality of the circumstances found in the record that Sprint's motives in moving Mr. Barli into plaintiff's position and reassigning plaintiff to the special projects position were discriminatory. No more is required from plaintiff. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (evidence of pretext may, together with the elements of the prima facie case, suffice to show intentional discrimination); *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995) (because a jury may find illegal discrimination upon nothing more than a prima facie case and pretext, such a showing at the summary judgment stage is sufficient to get the case to the jury).

Defendant's final argument in support of its motion for summary judgment is that plaintiff has no evidence that Mr. McKinley did not honestly believe that plaintiff was reluctant to relocate and act in good faith upon that belief in deciding to put Mr. Barli into the Director/ISM position. *See Bullington v. United Air Lines, Inc.*, 186 F.3d 1301, 1318 (10th Cir.1999) (the relevant inquiry is not whether defendant's reasons for its employment decisions were "wise, fair or correct," but whether defen-

dant "honestly believed those reasons and acted in good faith upon those beliefs"). Again, the court disagrees. Plaintiff's evidence is sufficient to show that Mr. McKinley seized on plaintiff's less-than-enthusiastic initial reaction to the relocation question as an excuse to put Mr. Barli in the position, without giving plaintiff a chance to provide an unequivocal. (and quite possibly an affirmative) response. In such circumstances, a trial is required on plaintiff's claims.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. # 79) is denied.

**IT IS SO ORDERED.**